IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### JUNE TERM, 1884.

JOSEPH W. PLUME, ADMINISTRATOR OF PHILIP Mc-
MAHON, DECEASED, v. THE HOWARD SAVINGS INSTI-
TUTION.

A decree of the Orphans' Court, granting letters of administration, founded
on a petition and proofs, presenting a colorable case, of the decease of
the alleged intestate, and as to his residence, cannot be called in ques-
tion in a collateral proceeding.

On case certified from Essex Circuit.

At the trial of the issues in the above-stated cause before
the court, without a jury, the following proofs were made:.

I. That on August 29th, 1857, one Philip McMahon de-
posited with the defendants, a savings institution at Newark,
the sum of $1000, and an account with him in that name and
as No. 105 was then opened. He received a deposit-book, of
which the exhibit Deposit Book No. 104 shows the form.
Drafts to the amount of $338 have been made against the ac
count and charged against it on the books of the bank. The

drafts were as follows: 1861, May 7th, $130; October 26th, $100; 1862, April 2d, $58; July 9th, $100. The amount now standing to the credit of the account is $3091.47.

II. On September 11th, 1883, the Orphans' Court of the county of Essex granted letters of administration to plaintiff on the estate of Philip McMahon, and copies of the letters and of the record of the proceedings before the Orphans' Court on the grant of the letters are set out.

III. No proof of Philip McMahon being in fact dead, either at this time or at the time of granting the letters, was offered before the court on the trial, or before the Orphans' Court on the grant of the letters, unless the presumptions of law arising from the proofs and evidence before the Orphans' Court show such proof, and are conclusive on that point.

IV. Demand for payment of the balance to Philip McMahon's creditors has been made by plaintiff upon defendants, but payment has been refused upon the ground that the record of plaintiff's appointment is not sufficient to establish plaintiff's title to the fund, and to protect them against any demand which may be made by Philip McMahon himself (if he be alive,) or any persons claiming under him.

The book of deposit has not been produced, but the bank do not insist upon their right to the production of the deposit-book under the by-laws, provided payment to the plaintiff in this case, under the letters granted him, will protect them against any other persons who hereafter may produce or claim payment under the same. Neither party has any information as to where the deposit-book now is. It has not been produced or delivered to defendants.

V. The pleadings in the cause are on the part of the plaintiff the common counts as administrator, with profert of letters; upon the part of the defendant:

1. *Ne unques* administrator.

2. That Philip McMahon, at the time of his death, was not a resident of the county of Essex.

3. That Philip McMahon did not die intestate a non-resident of the state.

The pleadings on either side may be added to or amended at the hearing in the Supreme Court if necessary, in order to determine the real question in controversy included in the questions certified.

VI. The following papers were evidence in the cause, and may, together with the evidence, be referred to by either party if necessary.

1. Copy of McMahon's account in bank.

2. Original deposit-book No. 104, containing by-laws in reference to deposits, &c.

3. Record of proceedings in Orphans' Court on grant of letters.

4. Letters of plaintiff.

Upon the above case, the following questions were certified to the Supreme Court for decision, by the judge of the Circuit Court:

1. Whether payment to the plaintiff of the amount standing to the credit of the account of Philip McMahon by the defendants, upon his title as shown by the record and proceedings in the Orphans' Court, will be a bar to the future recovery of the same by Philip McMahon or any person or persons, other than the plaintiff, claiming under him.

2. Whether, upon the proofs, the plaintiff is entitled to recover.

Argued at February Term, 1884, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and VAN SYCKEL.

For the plaintiff, *Wm. S. Gummere.*

The solution of the questions certified in this case depends mainly upon whether the presumption of death, raised by a seven-years' absence from this state, authorizes the granting of letters testamentary or of administration, (as the case may be), when the facts which raise the presumption of death are shown to exist.

If the statutory presumption of death raised by a seven-years' absence, does not authorize the granting of such letters, then the plaintiff in this suit is not entitled to recover; but if the authority exists where the presumption exists, then the questions certified should be answered in the affirmative.

I submit the following propositions:

I. That the statute of 1797 (*Rev.*, p. 294,) authorizes the appointment of an administrator (or the granting of letters testamentary), upon proof of absence from the state for seven years; and

II. That this is so even where the absentee is a non-resident, provided such absentee has assets in this state.

III. That the Orphans' Court of the county in which such non-resident absentee has assets has power to appoint such administrator in cases where there is a dispute concerning the right of administration, and that it is not bound to appoint the person who makes application for the purpose, but can appoint a third person.

IV. That, in order to authorize the Orphans' Court to appoint such administrator, it is not necessary to prove, affirmatively, before the court, that the non-resident absentee left no will.

V. That it is not necessary that the existence of the jurisdictional facts which authorize the Orphans' Court to make the appointment, should appear in the recitals of the decree settling the right of administration, or in the record of the proceedings.

VI. That the plaintiff in this suit is the duly appointed administrator of Philip McMahon, and, as such, is entitled to sue for and recover from the defendants the amount of the deposit of said Philip McMahon.

That upon payment of said deposit, the defendants will be fully protected against any claim for the same which may afterwards be made against them by Philip McMahon, or any person claiming under him; and that the plaintiff was

not bound to prove before the Circuit Court, in this suit, the death of Philip McMahon in any way except by putting in evidence his letters of administration.

I. The statute of 1797 authorizes the appointment of an administrator (or the granting of letters testamentary) upon proof of absence for seven years.

At common law (irrespective of the statute) proof of the fact that a person was absent and unheard of for seven-years, was proof that he was dead. *Thorne* v. *Rolff, Dyer* 185 *a.*

And the statute was meant to convert what, before its passage, had been a mere presumption of fact into a presumption of law. *Osborn* v. *Allen,* 2 *Dutcher* 390.

The language of the statute is very broad ; it says that a person absenting himself from this state, &c., for seven years, " shall be presumed to be dead, *in any case wherein his death shall come in question,* unless proof be made that he was alive within that time."

The statute was meant not only to affect the *status* of the person, but also of his property ; and the latter was its principal object; all the cases under the act show that this is so. *Wambaugh* v. *Schenck, Penn.* *229 ; *Hamilton* v. *Ross,* 1 *Halst. Ch.* 465 ; *Executors of Clark* v. *Canfield,* 2 *McCarter* 119 ; *Osborn* v. *Allen,* 2 *Dutcher* 388, are all cases where the question for determination was whether the plaintiff was entitled to property which would have been the absentee's if he had been alive, and were all decided in favor of the parties claiming the property.

It is the duty of the probate courts to grant letters testamentary, or of administration of the estates of all decedents ; that being so, when the law declares a person to be dead, it follows as a necessary sequence that the probate court must grant the letters upon proof made before it of the necessary facts.

Any other result would discharge the debts due to such a decedent and prevent his next of kin from enjoying any benefit from his personal estate.

The statute says that a person absenting himself, &c., shall

be presumed to be dead *in any case where his death shall come in question.* It needs no argument to show that the *vital* question before the Orphans' Court, in the case in hand, was whether Philip McMahon was dead; that was fundamental, and that he was dead could therefore be proved, either by absolute evidence of the fact or by showing a continued absence from this state for seven years.

II. That the statute applied to absentees who are non-residents as well as to those who are residents of this state.

The statute says *any person,* &c.; not any person who is a resident of this state; and the presumption of death has been held by our courts to apply as well to non-residents as to residents. *Executors of Clarke* v. *Canfield,* 2 *McCarter* 119·

III. Where the absentee is a non-resident, the Orphans' Court of the county where such non-resident has assets, has power to appoint an administrator, provided there is a dispute concerning the right of administration.

Section 30 of the Orphans' Court act (*Rev., p.* 758,) provides that when any person shall die intestate, who did not reside in this state at the time of his death, the Ordinary or surrogate  *  *  *  may grant letters of administration to the person making application, &c.

Section 31 provides that the surrogate mentioned in section 30 shall be the surrogate of any county in which there shall be any goods, chattels or assets of such intestate.

Section 9 of the " Act concerning executors and the administration of intestate estates" (*Rev., p.* 397,) provides that if the next of kin of an intestate shall not claim administration within fifty days after the death of such intestate, the Ordinary or surrogate may appoint any fit person applying therefor.

Section 28 of the Orphans' Court act provides that if the next of kin of a person dying intestate refuse to take administration, then it shall be committed to such proper person as will accept the same.

It seems to me clear, in view of the last two sections, that it

was not the legislative intent, in passing section 30 of the Orphans' Court act, to deprive the next of kin of a non-resident decedent of the right of administration, if the application provided for in the section should happen to be made by a stranger. Nor to deprive the court making the appointment of the power to appoint any one except the person making the application. The language of the act is significant; it is "*may* grant letters of administration to the person making the application." Counsel for the defendants insists that this clause means that the Ordinary or surrogate may appoint such person, but, if they do not deem it advisable to appoint him, then they shall not have power to appoint any one.

It seems to me that the construction contended for is too narrow, and that the true meaning of the clause is that the Ordinary or surrogate *may* appoint the person applying if they see fit to do so, or they may appoint the next of kin; or if the next of kin renounce, and the person making the application is not a fit person to be appointed, or if more than fifty days have elapsed since the death, then they may appoint such other proper person as will accept the same.

Any other construction would prevent the estate of a non-resident decedent from being administered upon, if the person applying for administration was not a fit person to be appointed.

And, even if the grant of letters to any person except him who made the application is unauthorized, still such grant is not void, but voidable, and is good until revoked. *Inskeep* v. *Lecony, Coxe* 113; *Quidort's Administrator* v. *Pergeaux*, 3 *C. E. Green* 472.

But the defendants say the power to appoint an administrator of the estate of a non-resident intestate is lodged by section 30 of the Orphans' Court act, in the Ordinary or surrogate, and even if the appointee may be a person other than the one making the application, still the Orphans' Court has no power to appoint, and its assumed action is *coram non judice*.

This is so ordinarily, but not in the case now before the court.

The record in this case shows that the application for administration was made to the surrogate of the county of Essex, in accordance with the direction of the statute; if there had been no controversy as to the right of administration, the surrogate alone would have had power to appoint the administrator; but certain of the next of kin of the decedent filed a *caveat* against the appointment of the applicant as administrator, and that act gave the Orphans' Court full power to hear and *determine* the controversy. *Orphans' Court Act*, § 1 (*Rev.*, *p.* 753.)

IV. It is not necessary to prove affirmatively the fact that a non-resident decedent has not left a will.

It is not necessary, because it is impossible to prove such a negative proposition; the presumption must necessarily be where no will is produced, and there is no proof of the existence of a will, that the decedent died intestate.

And even if that be not so, still the fact that an administrator has been appointed, raises the presumption that the court granting the letters had proof before it that the decedent died intestate.

V. It is not necessary that the jurisdictional facts which authorize the Orphans' Court to make the appointment, should appear in the recitals of the decree settling the right of administration, or in the record of the proceedings.

"The Orphans' Court is not a court of special jurisdiction. It does not exercise a mere delegated authority for special purposes. It is a regularly constituted tribunal of justice, with broad and comprehensive powers. *Its decrees upon all subjects within the scope of its jurisdiction, are entitled to every presumption in favor of their regularity that the judgments of this court* [the Supreme Court] *are entitled to. While they remain in force they are equally binding.*" *Hess* v. *Cole*, 3 *Zab.* 121; *Den* v. *Hammel*, 3 *Harr.* 80; *Den* v. *O'Hanlon*, 1

*Zab.* 582; *Quidort's Administrator* v. *Pergeaux,* 3 *C. E. Green* 472.

The maxim " *Omnia præsumuntur rite esse acta* " applies.

It is a presumption of law that the decisions of a court of competent jurisdiction are well founded, and *that facts without proof of which the verdict could not be found, were proved at the trial.* *Broom's Legal Maxims* \*729; see, also, *Gosset* v. *Howard,* 10 *Q. B.* 448–458.

" The rule for jurisdiction is that nothing shall be intended to be out of the jurisdiction of a superior court, but that which specially appears to be so." *Peacock* v. *Bell & Kendall,* 1 *Saund.* 74.

VI. The plaintiff in this suit is the duly appointed administrator of Philip McMahon, and, as such, is entitled to sue for and recover from the defendants the amount of Philip McMahon's deposit in their bank.

The Orphans' Court has general jurisdiction over all controversies respecting the right of administration upon the estate of any person who dies intestate. *Orphans' Court Act,* §§ 1, 27.

In this case, therefore, the Orphans' Court had jurisdiction over the *subject matter.* Whether it had jurisdiction over this particular case depended upon the following facts:

1. Whether Philip McMahon was dead; if he was, then

2. Whether there was a controversy respecting the existence of a will, or the right of administration upon his estate.

3. Whether the decedent was a resident of Essex county at the time of his death; if he was not, then

4. Whether he was a non-resident of the state, having assets in Essex county; if he was such non-resident, then

5. Whether he died intestate.

In order to ascertain whether it had jurisdiction of this particular case, it was necessary for the Orphans' Court to ascertain whether these facts existed. This being so, its decision that the necessary facts did exist, and that therefore it had jurisdiction of this case, is conclusive until reversed, vacated

or revoked, *provided there was any proof before the court* of the existence of those facts. *Roderigas* v. *Savings Institution,* 63 *N. Y.* 464; *Staples* v. *Fairchild,* 3 *N. Y.* 41; *Brittain* v. *Kinnard,* 1 *Brod. & Bing.* 432; *Grove* v. *Van Duyne,* 15 *Vroom* 654.

And even where the proof of the existence of the facts is slight and inconclusive, the decision of the Orphans' Court will be valid until set aside upon a direct proceeding for that purpose. *Staples* v. *Fairchild, supra.*

Undoubtedly, if there is *no proof whatever* before the Orphans' Court of the existence of the jurisdictional facts, the decision is absolutely void. *Roderigas* v. *Savings Institution.* 76 *N. Y.* 316.

But the Orphans' Courts of this state not being courts of special jurisdiction, and in this respect they differ from the Surrogates' Courts of New York (see 63 *N. Y.* 463,) the presumption is that its decision is well founded, and that the facts without proof of which its decisions could not have been made, were proved before the court. *Broom's Legal Maxims* \*729.

This being the presumption, and there being no proof to the contrary, it must be held in this case that all the facts necessary to give the Orphans' Court jurisdiction, and to authorize the appointment of the plaintiff as administrator, were proved before the court.

And even if it is necessary for the purpose of sustaining the decision of the Orphans' Court, for this court to presume that it was proved before the Orphans' Court that, at the time of his death, Philip McMahon was a resident of Essex county, and that none of the next of kin would accept administration (*Rev., p.* 758, § 28,) or that the next of kin neglected to claim administration within fifty days after his death (*Rev., p.* 397, § 9,) this court will make that presumption. *Kennedy* v. *Armstrong, Spenc.* 693, 695.

If the plaintiff is the duly and legally appointed administrator of Philip McMahon, or if his appointment is valid until it is vacated, or until the decree of the Orphans' Court

is reversed in a direct proceeding, then it needs no argument to show that he is entitled to recover the amount of the deposit sought by this suit.

And it was neither necessary nor proper for the plaintiff, at the trial at the Circuit, to prove, affirmatively, that Philip McMahon was dead. That fact had already been adjudicated upon by the Orphans' Court, and the production of plaintiff's letters of administration was all that was necessary. 1 *Saund. Pl. & Ev.*, pt. 1, p. 126 *et seq.*

The existence of the letters raised the presumption of death, and the burden of proof to show that he was alive rested upon the defendants; and it is, at least, doubtful if they would be permitted to prove that fact if it existed, for such proof would be a collateral attack upon the letters. *Roderigas* v. *Savings Institution*, 63 *N. Y., supra.*

Upon payment of the amount of the deposit to the plaintiff by the defendants, they will be fully protected against any claim for the same which may thereafter be made by Philip McMahon, or any person claiming under him. *Allen* v. *Dundas*, 3 *T. R.* 125; *Roderigas* v. *Savings Institution*, 63 *N. Y.* 460.

Without such claimant should be able to show, affirmatively, (what does not appear in this case,) that when the Orphans' Court appointed the plaintiff administrator, it had *no proof whatever* before it of the existence of the facts necessary to give it jurisdiction. *Roderigas* v. *Savings Institution*, 76 *N. Y.* 316.

Moreover, the law of this state is an inherent part of every contract made in this state, and to be performed in this state; and when Philip McMahon made the deposit in the defendants' bank (and at that time they were both residents of this state,) the law injected into the contract between the parties, the provision that if McMahon should absent himself from the state for the period of seven years, successively, and should be unheard of during that time, he should be presumed to be dead, and that the bank should thereupon pay over his de-

posit, with the accumulations thereon, to his duly authorized personal representative.

For the defendants, *John R. Emery*.

I. The plaintiff should not be held entitled to recover unless a recovery by him as administrator is a complete payment and discharge of the debt against all persons whomsoever.

The defendants, by the deposit, made a contract and owed a debt, under certain conditions, to Philip McMahon; that debt they should be compelled to discharge once, and only once, and if the law compels payment to any other person than Philip McMahon, it should be upon the ground that this payment is as valid and complete a discharge of the debt as if made to Philip McMahon himself.

There is no reason in justice why the defendants, by the adjudication of the courts of law in the present case, should be compelled to take the risk of being called upon by McMahon or any other person for the same debt.

This is the basis and ground of all those decisions which hold that payment is good to an executor of a forged will on which probate is made, and other analogous cases.

See cases, &c., cited in *Ryno's Executor* v. *Ryno's Administrator*, 12 *C. E. Green*, and *Quidort's Administrator* v. *Pergeaux*, 3 *C. E. Green*, where it was extended to case of letters granted where the will was claimed to have been made.

In this case, also, the defendants have made their waiver of right to require production of the book before payment, conditional on the payment to plaintiff being a complete discharge. They could not be asked to go further.

Defendants are not parties to proceedings for administration and have no rights there; important, therefore, that they should be protected.

II. The only question arises as to the application of this principle in cases where the letters may be declared void for want of *jurisdiction* by reason of the *existence* of the person upon whose estate letters have been granted.

On this point there is a division of opinion in the courts, as to whether an adjudication of *death intestate* by the proper court is conclusive to the extent of protecting acts done, and payments to the administrator, &c., in case the person should be actually alive.

The whole subject is discussed in 10 *Am. Law Rev.* 337, *and notes and cases;* 15 *Am. Law. Reg.* (*N. S.*) 205 *; (notes to Roderigas* v. *Savings Bank,* by Judge Redfield.)

The New York case, *Roderigas* v. *Savings Bank,* 63 *N. Y.* 460, adopts the rule that adjudication of the probate court is conclusive, and will protect.

See *Roderigas* v. *Savings Bank,* 76 *N. Y.* 316, for comments on this case, and how *adjudication* must be made.

*Jochumsen* v. *Savings Bank,* 3 *Allen* 96, leading case, *contra.* See *notes of Judge Redfield, supra.*

Many of the courts hold that the mere *grant of* letters is not conclusive evidence as to the death. This is the English rule. *Moons* v. *De Benales,* 1 *Russ.* \*307, (*Langdall, M. R.*); also, *Thompson* v. *Donaldson,* 3 *Esp.* \*63.

Here, title was claimed through the alleged decedent. When death is proved the letters are conclusive evidence of plaintiff's right of succession.

As to want of conclusiveness on question of residence within the jurisdiction of the court granting letters, see, also, *Weston* v. *Weston,* 14 *Johns.* 428, where the letters were *held void* in a collateral proceeding when *relied on as the title,* on the ground that decedent was a non-resident of the state. See, also, *Ex parte Barker,* 2 *Leigh* 719 ; *case contra,* 2 *Ph. Ev. C. & H.,* notes 290, citing *Ruborg* v. *Hammond,* 2 *Harr. & G.* 42, 50.

III. The nature and character of the jurisdiction of the Orphans' Court is well settled to be a *limited,* but not a special jurisdiction. *Den* v. *Hammell,* 3 *Harr.* 78, 81 ; *Hess* v. *Cole,* 3 *Zab.* 116.

In reference to granting letters of administration, the Orphans' Courts are limited to granting these letters in case of *death intestate,* and the Orphans' Court of each county is

further limited to cases where the decedent was a *resident of the county* at his death.

*Rev.,* " *Orphans' Court,*" §§ 2, 27.   Section 2 gives the Orphans' Court " power and authority to hear and determine all controversies respecting   *   *   *   the right of administration   *   *   *   *as hereinafter directed,*" not a general grant.   Section 27 limits jurisdiction to *residents of the county.*

There is no jurisdiction in the Orphans' Court or the surrogate of any county to grant letters on the estate of a deceased resident in any other county.

The *surrogate* of any county in which there are assets of a *non-resident intestate,* has jurisdiction on certain proceedings to grant letters *to the applicant in those proceedings.   Rev.,* " *Orphans' Court,*" § 30.

But this seems to be confined to granting letters to the petitioner, and not to exercising a general power of granting letters—nor is the power either of granting letters to the petitioner, or of determining disputes, expressly granted to the Orphans' Court.

The Ordinary has the power of granting letters in such cases independent of the statute.   This is : see *Coursen's case,* 3 *Green's Ch.* 408, as to the general jurisdiction.

IV. The record of the proceedings in the Orphans' Court shows on its face a warrant of power or authority to adjudicate upon the question of the *death intestate* of McMahon.

1. Because, if McMahon was a resident of the state, he was a resident of Sussex county, and not of Essex.

2. If he was a non-resident, there was no allegation that he died *intestate,* upon which the court were called upon to adjudicate.

3. If he died abroad, intestate, the surrogate or the Ordinary were the only officers who could grant the letters under the statute, and these letters must be granted to the applicant in special proceedings.

V. There was, in fact, no adjudication by the Orphans' Court of the death of McMahon, *intestate,* or of his residence in Essex county.

The adjudication was "that he be presumed to be dead —no adjudication as to intestacy.

As to residence in *Essex county*, there was no adjudication.

VI. In order to be conclusive on the question of death, intestate, the decree of the Orphans' Court must, as an adjudication, be based upon *due proof* and adjudication thereon. See *Roderigas* v. *Savings Institution*, 76 *N. Y.* 316 (1879,) holding that petition not sufficient.

In present case, the adjudication of death, or presumption of death, is made, as appears by the record on its appearing to the court that McMahon *has absented himself from this state*. This presumption is inapplicable, unless this state was the last known residence of McMahon, which it was not. The statute (*Rev.*, *p.* 294,) does not apply to *non-residents*.

*Daire* v. *Briggs*, 94 *U. S.* 628. Does, "beyond sea," mean beyond "United States," or state only?

VII. The plaintiff having failed to prove, on the trial, McMahon's death, has not made out his title by the production of the letters based on this defective record, and payment to him would not protect defendants against a future recovery of the deposit to McMahon or any person claiming legally under him, and judgment should therefore be rendered for the defendants.

Defendants should not be required to prove that jurisdictional facts appearing by the record did not exist, because the plaintiff should not be held entitled to recover, unless payment on his record title is a complete and valid discharge of the debt. Defendants ought not to be required to take the risk of any disproof of the record.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is a suit by an administrator, and the only question for solution is whether, in this proceeding, it can be shown as a defence that the letters of administration held by the plaintiff, and which were in due form granted to him by the Orphans' Court of the county of Essex,

are invalid.    There were two reasons assigned on the argument in favor of the affirmation of this proposition, namely,. first, " that the Orphans' Court acted in the premises without due proof of the fact of the death of the plaintiff's intestate ; " and second, " that at the time of such judicial action it affirmatively appeared that the decedent was not a resident of the county of Essex, but, to the contrary, had his residence at the time of his alleged death in the county of Sussex."

The substance of the case, as it was made before the Orphans' Court, was this : on the 23d of February, 1883, one Charles Farrelly presented his petition to the surrogate of the county of Essex, stating that Philip McMahon, (the decedent,) some time . previous to the year 1853, resided in the town or township of Newton, in the county of Sussex, where he was pastor of the Roman Catholic church there located ; that in or about the year above stated he left this state and was stationed in Ohio, and that in the years 1862, 1863 and 1864 he was in the State of Nebraska; that when he left the State of New Jersey he had a considerable sum of money deposited with the defendants, and that in the year 1862 he drew out a small part of such moneys, and that since that date he had not visited nor communicated with said institution ; that petitioner, at the request of one of the relatives of the decedent, had made, during the year preceding the filing of his petition, inquiries from time to time touching the existence of the said Philip, and had called upon such persons from whom he thought it possible he could gather information, and had written upon the subject to priests and officers of the Catholic church in every state of the United States in which he had reason to suppose information might be gathered, but that he had been unable to learn anything which he thought of any value except from the vicar-general of the diocese of Kansas, who had stated that the said Philip was at Benedicts' College in the State of Kansas for several months in the year 1861, whence he had gone to Nebraska, and that he had heard he had died some twelve or fourteen years previous to the year 1882, but where or how, he did not remember ; that peti-

tioner had examined the ecclesiastical directories of the Catholic church throughout the world, published during the then last thirty years, and had been unable to find any mention of the said Philip since the year 1858, and that two of the brothers of the said Philip had expressed their belief that he was dead. This petition was duly verified by oath, and upon filing it, the surrogate ordered a notice, setting forth that Philip McMahon was presumed to be dead intestate and that it was necessary to have letters of administration of his estate granted in this state, directing all persons to show cause before the Orphans' Court of the county of Essex, at a stated time, why the same should not be issued, and ordering such notice to be published in a newspaper published in Newark, in one published and circulating in the State of Nebraska, and in a third in the State of Ohio.

A dispute having been raised before the surrogate as to the right to administration, the matter was referred to the Orphans' Court, which, by its decree dated the 11th of September, 1883, after reciting, among other things, that it appeared that the said Philip McMahon had absented himself from this state for seven years last past successively, and no proof being made that he was alive within said seven years, granted letters of administration to the plaintiff.

Looking at the foregoing statement of facts, it is manifest that the Orphans' Court, on the occasion in question, had jurisdiction of the subject involved in the application for authority to administer the estate of Philip McMahon as that of a deceased intestate. Such matter was as actually before that tribunal for its adjudication as it was possible for it to be. We might perhaps have doubt whether the court deduced the correct conclusion from the testimony before it as to the fact of the death of the alleged decedent, or as to its right to grant administration, under the conditions of the case, to the plaintiff, but it seems illogical to deny the power of the court to take cognizance of the affair and to proceed to judgment. In the case of *Grove* v. *Van Duyne*, 15 *Vroom* 654, the test of jurisdiction, so far as relates to courts having a

general cognizance over a class of cases, was declared by the Court of Errors to be the colorable presentation before it of the facts necessary to constitute the case a member of such class. In the present case there was plainly some proof of the death of the supposed intestate, and likewise of the fact that he was not, at the time of his decease, a resident of this state, and therefore, even if the court fell into error, which I do not intend to indicate, such error might have led, in a proper course of law, to a reversal of the judgment, but it can have no bearing against the right of the court to adjudicate upon the facts before it. Upon this assumption, that this power of judicature existed, it is apparent that the defendant in this instance must stand on the proposition that he has a right to show that the Orphans' Court decided incorrectly with respect to the evidence relating to jurisdictional facts. But such a contention is opposed to fundamental rules of law. If its correctness were admitted, it would at once degrade the judgments of the higher courts of the state to the subordinate rank of official procedures of a special character by statutory authority. For example, on such a theory a judgment of this court might be overthrown when put to the touch in a collateral proceeding, on the ground that the court erred in deciding on the facts before it that the defendant in the suit had been summoned, when in point of fact he had not received any notice of the action. Notice of a suit to a defendant in an action is as indispensable to the power of the court to take cognizance of the case, as is the fact of the decease of an alleged intestate, to the jurisdictional authority of the Orphans' Court to act in the matter of administration, and no reason can be urged while, if one of such subjects be open to incidental attack, the other should not be equally so. In such a particular, the highest court of this state cannot be discriminated from the Orphans' Court, for it is entirely settled by repeated judgments that this latter tribunal is a superior court of general jurisdiction, and that its proceedings and judgments are, in no respect, more contestable than those of common law courts of the highest order. Such is the doctrine declared in

*Hess* v. *Cole*, 3 *Zab.* 116, 121, the court saying : " The juris-
diction of the Orphans' Court, though limited, is not special.
It does not exercise a mere delegated authority for special pur-
poses. It is a regularly constituted tribunal of justice, with
broad and comprehensive powers. Its decrees upon all subjects
within the scope of its jurisdiction are entitled to every pre-
sumption in favor of their regularity that the judgments of
this court are entitled to. While they remain in force they
are equally binding." The following cases assert the same
principle in its application to various circumstances : *Den* v.
*Hammel*, 3 *Harr.* 73 ; *Den* v. *O'Hanlon*, 1 *Zab.* 582 ; *Qui-
dort's Administrator* v. *Pergeaux*, 3 *C. E. Green* 472.

And in view of these principles it appears to me incontest-
able that the defence in this case cannot prevail. Courts of
general jurisdiction need not set forth in their records the
facts upon which their right to adjudicate depends, but such
facts will be presumed, and no evidence can be received to
contradict them, as such intendments are *presumptiones juris
et de jure*. It is, indeed, this quality that constitutes the
principal distinction between courts of superior and general
jurisdiction, and those of limited and special jurisdiction.
This doctrine is unquestionable, and is too rudimentary to
justify discussion. The authorities will be found copiously
collected in the notes to *Crepps* v. *Durden*, 1 *Smith's L. C.*
978.

Consequently, when the Orphans' Court of the county of
Essex, having the matter by the requisite proceedings before
it, awarded letters of administration in the present case, it will
be intended, by force of the rule of law just stated, that it
decided all the facts requisite to validate its action. If it had
not been deemed to be satisfactorily shown that the alleged
intestate was dead, and that he was not resident at the time
of his death in this state, and that the plaintiff, although not
the original petitioner, could be legally appointed the admin-
istrator, the decree which was made could not have been
lawfully made, and the consequence is, it must be held in
this incidental proceeding that such matters were passed upon

by the court.   To such a procedure the maxim "*omnia præ-sumuntur rite esse acta*" is applicable.   And with respect to the present inquiry it matters not at all whether the clause of the statute that regulates the proceedings on applications for authority to administer the estates of non-resident decedents, was rightly construed by the Orphans' Court, inasmuch if an error exists in that particular it cannot be corrected except in a direct appellate review.

With respect to the authorities cited in the briefs of counsel, it is sufficient to say that they are conflicting, and that none of them appear to be strictly in point.   In most, if not all, of such cases, it was affirmatively shown that the alleged decedent was actually alive at the time of the issuance of letters of administration, while in the present case there is no reason for even surmising such to have been the fact.   In almost all the instances cited in which the fact of the death of the alleged intestate was allowed to be shown in order to overthrow the administration, the tribunal granting it was held to be a court of limited and special jurisdiction.   On the other hand, an authority to administer granted even by such a court, was declared to be invulnerable to all collateral attacks in the carefully considered case of *Roderigas* v. *East River Savings Institution*, 63 *N. Y.* 464.   The point decided was that a payment by a debtor to an administrator duly appointed was valid, and a bar to a second action, although the supposed intestate was alive at the time, and the letters of administration were subsequently revoked for that reason. As we are dealing in the present case with the decree of a court of general jurisdiction, it is not necessary to affirm the doctrine of this reported case, though in passing it may not be out of place to remark that its reasoning, notwithstanding the adverse criticism to which it has been subjected, appears to be of great weight.   That a conclusive efficacy should be given to letters of administration by whatever tribunal issued, so far as merely collateral impeachment is concerned, is a plain dictate of sound public policy, for few things can be more oppressive than to require the debtors of a person who chooses so

to absent himself as to give rise to a judicial conclusion that he is dead, to bear the burden of paying the debts they owe to such absentee, to his representative duly appointed according to legal forms, and at the same time to assume the risk of such payment being afterwards declared to be invalid, on the ground that such absentee was still alive. The doctrine of the nullity of such grants of administration would also be attended by the further disastrous result of rendering the surrogate or other court of limited jurisdiction liable to be treated as wrong-doers for everything that should be done by virtue of such letters, and which might prove detrimental to the interests of the person supposed to be dead. But this question is not now before the court; for all that we are now called upon to declare is the doctrine already stated, that this decree of the Orphans' Court is not contestable in this collateral way.

The defendant will be put in no danger by paying the money in question to the plaintiff, for such payment will be an absolute discharge of the debt.

Let judgment be given for the plaintiff.