NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4562-13T1

IN THE MATTER OF THE ESTATE OF
BYUNG-TAE OH, DECEASED.

> **APPROVED FOR PUBLICATION**
>
> **May 13, 2016**
>
> **APPELLATE DIVISION**

_____

Argued April 26, 2016 — Decided May 13, 2016

Before Judges Fisher, Rothstadt and Currier.

On appeal from the Superior Court of New Jersey, Chancery Division, Probate Part, Bergen County, Docket No. P-018-13.

William D. Grand argued the cause for appellant Hyung Kee Oh (Greenbaum, Rowe, Smith & Davis LLP, attorneys; Mr. Grand, of counsel; Mr. Grand and Olivier Salvagno, on the brief).

Evelyn R. Storch argued the cause for respondent Won Ki Oh (Harwood Lloyd, LLC, attorneys; David M. Repetto, of counsel; Ms. Storch and Minjung Suh, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, we consider the propriety of a summary judgment that determined whether a money transfer — made by a now-deceased Korean citizen to a New Jersey limited liability company — constituted an investment and, thus, an asset of the decedent at the time of his death, or a gift to his son, the

general partner of the limited liability company. We also consider whether the court had jurisdiction to make that determination, even though this argument was not asserted in the trial court.

The following facts are undisputed. Byung-Tae Oh, a citizen and resident of the Republic of Korea, died in Seoul on February 6, 2012. Because he died intestate, it appears that, pursuant to Korean law, his two sons and one daughter — Won Ki Oh, Hyung Kee Oh, and Hyunjoo Oh — inherit equal shares of the estate and the surviving spouse, Hyesung Lee, inherits one-and-one-half times the share inherited by each child.[1]  It is also undisputed that, in 2001, Byung-Tae Oh (hereafter "decedent") wire transferred $900,000 from his personal bank account at Standard Chartered Bank, Seoul Nonheyon Branch, into the New Jersey business account of B&H Consulting and Development Company, LLC, a New Jersey limited liability company formed by decedent's youngest son, Hyung Kee Oh, and his son's wife, Sung Hee Park.

In a complaint filed in the Probate Part on January 18, 2013, plaintiff Won Ki Oh (hereafter "plaintiff"), decedent's eldest son and a resident of the Republic of Korea, alleged that

---

[1] General information about Korean intestacy laws was included in a certification filed in the trial court by a Korean attorney. The parties do not appear to dispute how Korean law requires the division of decedent's estate.

decedent owned at the time of his death various interests in property in New Jersey, including a 40.8% interest in B&H. The action sought the appointment of an administrator for the purpose of marshaling decedent's New Jersey assets.[2]

Decedent's other son, Hyung Kee Oh (hereafter "defendant"), a New Jersey resident and general partner of B&H, moved to dismiss this action based on his contention, among others, that decedent owned no assets in New Jersey at the time of his death. Contrary to plaintiff's claims, defendant asserted that in 2001 decedent gave him $900,000, which he used "as part of the start[-]up money for B&H," and that "[a]t no time did [decedent] treat that payment as entitling him to a legal ownership interest in B&H." The motion to dismiss was denied without prejudice.

Thereafter, the parties pressed their positions as to how the $900,000 transfer by decedent to B&H should be characterized — defendant arguing it was a gift and plaintiff arguing it was an investment in B&H and, therefore, part of the estate — by cross-moving for summary judgment. Chancery Judge Robert P. Contillo granted plaintiff's and denied defendant's motion. Defendant appeals, arguing the judge erred in granting summary

---

[2] Plaintiff alleged in his complaint that an estate tax return filed by decedent's widow valued the gross estate at more than 33,000,000,000 South Korean Won (approximately $31,000,000).

judgment because, in his view: (1) the court lacked jurisdiction over the dispute; (2) the chancery judge mistakenly applied New Jersey law instead of Korean law; (3) even if New Jersey law applies, the chancery judge erred "by refusing to apply the presumption that a transfer from a parent to child is a gift"; (4) the chancery judge should have conducted an evidentiary hearing to develop and resolve the parties' factual dispute; and (5) the chancery judge erroneously provided the administrator with greater authority than necessary in the circumstances.

Despite defendant's failure to present his first argument — lack of jurisdiction — to the trial court,[3] we consider and reject it on its merits.[4]

Defendant's jurisdictional argument presents a classic chicken-and-egg problem. Our probate courts may exert ancillary jurisdiction over property within the State when possessed by an intestate nonresident at the time of death. N.J.S.A. 3B:10-7. In determining whether it has jurisdiction pursuant to this statute, a court must necessarily determine whether the property

---

[3] Defendant did not signal, as he should have, that this argument was not asserted in the trial court as required by Rule 2:6-2(a)(1).

[4] A lack of subject matter jurisdiction may be asserted for the first time on appeal. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); Macysyn v. Hensler, 329 N.J. Super. 476, 481 (App. Div. 2000).

within the State was possessed by an intestate nonresident. There being no dispute that decedent was a nonresident and intestate, and that B&H is a New Jersey limited liability company, the only question about the exercise of jurisdiction over the property is whether it was owned by decedent at the time of his death. That remaining question, however, constitutes the primary dispute between the parties. Consequently, to determine whether the court possessed ancillary jurisdiction pursuant to N.J.S.A. 3B:10-7, the judge was required to resolve the merits of the parties' dispute about the nature of the $900,000 transfer.

As perplexing as this may initially sound, the situation is not uncommon; our Supreme Court has recognized that a jurisdictional question may often be intertwined with the underlying dispute and, in that instance, "the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." Blakey v. Continental Airlines, 164 N.J. 38, 71 (2000) (quoting Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983)); see also Plume v. Howard Sav. Inst., 46 N.J.L. 211, 228 (Sup. Ct. 1884) (observing, in a similar setting, that an error in a determination that the decedent was a resident of the state might warrant reversal of the judgment "but it can have no

bearing against the right of the court to adjudicate upon the facts before it"); In re Russell's Estate, 64 N.J. Eq. 313, 317-18 (Prerog. Ct. 1902) (recognizing the court's authority to resolve a dispute about the decedent's residency before determining whether the court possessed jurisdiction over a nonresident decedent's New Jersey property). Had defendant raised this jurisdictional issue when he either opposed or moved for summary judgment,[5] the chancery judge would have been in no different position than he was when he ruled on the cross-motions. That is, the judge would have recognized he would have to first resolve the dispute about the nature of the $900,000 transfer before determining whether the court possessed ancillary jurisdiction over the property. In correctly ascertaining the monetary transfer constituted an investment and not a gift, Chancery Judge Contillo implicitly and correctly concluded the court possessed jurisdiction over the parties' dispute.[6]

---

[5] Defendant's argument that he asserted lack of jurisdiction as an affirmative defense in his responsive pleading does not mean that he raised the issue in the trial court. A litigant must do more and cannot expect that a judge who has been asked to rule on a dispositive motion will scour the pleadings for other arguments or defenses a party might have once contemplated but chose not to assert in the motion.

[6] It appears that to some extent defendant argues in this same context that the Republic of Korea offers a more convenient or

(continued)

Our rejection of defendant's conflict-of-law argument — by which he claims the judge should have applied Korean rather than New Jersey law — rests on different grounds. First, unlike the jurisdictional issue, the conflict-of-law issue was not raised in the trial court and, therefore, we need not consider defendant's belated argument that the chancery judge should have applied Korean law. See US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 483 (2012). Second, when posing a conflict-of-law issue, a party is required to demonstrate a difference between the competing bodies of law. DeMarco v. Stoddard, 223 N.J. 363, 383 (2015); Cornett v. Johnson & Johnson, 211 N.J. 362, 374 (2012); P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 143 (2008). Defendant did not argue to the chancery judge, and has not argued to us, that Korean law compels a different result than that reached through a proper application of New Jersey

_____

(continued)
better forum for resolution of the issues presented; plaintiff, in fact, commenced an action there a few weeks after the matter at hand was commenced. We find insufficient merit in defendant's argument in this regard to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We do not mean to be flippant in suggesting that the best source of information for deciding this issue would be the decedent, but he is not available regardless of which forum adjudicates the issue. The point is this action was filed first, and defendant has not demonstrated how Korea provides a better forum for a fair and complete resolution of the issues that might warrant a disregard of the presumption in favor of the first-filed action. See Sensient Colors, Inc. v. Allstate Ins. Co., 193 N.J. 373, 386 (2008).

law; indeed, he has cited only New Jersey authorities in his written submissions. Consequently, we find insufficient merit in this argument to warrant further discussion. R. 2:11-3(e)(1)(E).

In his third and fourth arguments, defendant contends the chancery judge, in granting summary judgment in plaintiff's favor, failed to apply the presumption described in Bhagat v. Bhagat, 217 N.J. 22, 41-42 (2014), and mistakenly declined to conduct an evidentiary hearing or otherwise recognize there were disputed questions of material fact that required a denial of summary judgment.

The judge's rejection of the presumption and his grant of summary judgment are not entitled to deference. In reviewing the summary judgment entered in plaintiff's favor, we apply the same standard that bound the chancery judge, see, e.g., Townsend v. Pierre, 221 N.J. 36, 59 (2015), and we are required to reverse when "the competent evidential materials presented, . . . viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged dispute in favor of the non-moving party," Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995). The import of this standard is that courts "should not hesitate to grant summary judgment" — and appellate courts should not hesitate to

affirm those summary judgments — "when the evidence 'is so one-sided that one party must prevail as a matter of law.'" Ibid. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202, 214 (1986)).

We turn first to the burden of persuasion when determining whether a transfer constitutes a gift. As the Supreme Court has recognized, "[t]he burden of proving an inter vivos gift is on the party who asserts the claim." Bhagat, supra, 217 N.J. at 41 (citing Sadofski v. Williams, 60 N.J. 385, 395 n.3 (1972)). As a general matter, "the recipient [of the alleged gift] must show by 'clear, cogent and persuasive' evidence that the donor intended to make a gift." Ibid. (quoting Farris v. Farris Eng'g Corp., 7 N.J. 487, 501 (1951)). The Supreme Court has also described the degree of proof necessary as "clear and convincing" where the claim of a gift is first asserted after the alleged donor's death, as here. Sadofski, supra, 60 N.J. at 395 n.3.

The Court has held, however, that when "the transfer is from a parent to a child, the initial burden of proof on the party claiming a gift is slight." Bhagat, supra, 217 N.J. at 41 (citing Metropolitan Life Ins. Co. v. Woolf, 136 N.J. Eq. 588, 592 (Ch. 1945), aff'd, 138 N.J. Eq. 450 (E. & A. 1946)). In essence, it is said that "a presumption arises that the transfer

is a gift," ibid. (citing numerous cases, including, Peppler v. Roffe, 122 N.J. Eq. 510, 515 (E. & A. 1937)), because "a child is considered a natural object of the bounty of the donor," id. at 42 (citing Weisberg v. Koprowski, 17 N.J. 362, 373 (1955)).

We agree with Chancery Judge Contillo that defendant was not entitled to the presumption that might normally attach to a transfer from a parent to a child because decedent did not transfer $900,000 to defendant; he transferred those funds to B&H.[7] Without this presumption, defendant was obligated to show by clear, cogent and persuasive evidence that decedent intended that the transfer to B&H was a gift to him. We agree as well with the judge that defendant's factual presentation fell woefully short and its inadequacy justified the entry of summary judgment.

Defendant offered no documentation that would suggest decedent intended to make a gift; instead he largely alluded to the absence of documentation, pointing out that plaintiff was unable to produce either a certificate of decedent's membership in B&H or a loan agreement between B&H and decedent. That is all true, but plaintiff did provide documentation that showed decedent annually confirmed the existence of this investment in

---

[7] It is noteworthy that defendant and his wife maintained a personal bank account in New Jersey into which any monetary gift could have been conveyed had that been decedent's intention.

B&H by submitting — every year from 2001 until his death — investment status sheets to the Export-Import Bank of Korea, a quasi-governmental entity, reflecting that he made a direct overseas investment of $900,000 in B&H and that he held a 40.8% interest in B&H. Even if any substance could be found in the only direct evidence provided by defendant — his self-serving accounts of discussions with the decedent[8] — it was incapable of sustaining defendant's burden of proving a gift and paled in comparison to the contrary, written representations made by decedent to the Export-Import Bank of Korea. We agree with the chancery judge that, as a matter of law, if the matter went to trial, defendant would have been unable to sustain his burden of showing by clear and convincing evidence that decedent intended the $900,000 he wired to B&H to be a gift to defendant; the proofs were so one-sided that plaintiff was entitled to summary judgment.

In his last argument, defendant contends that the judge's grant of authority to the administrator exceeded what was

---

[8] See Metropolitan Life Ins. Co., supra, 136 N.J. Eq. at 592 (recognizing that "uncorroborated testimony of the donee claiming a gift must be carefully scrutinized"). We are cognizant that decedent's widow testified at her deposition that decedent said the $900,000 transfer was a gift, but we are also mindful that she filed an estate tax return that represented decedent owned, at the time of his death, a 40.8% interest in B&H.

necessary under the circumstances. The judge's May 8, 2014 order specifically authorized the administrator:

> to perform all acts of estate administration, including but not limited to: marshaling the assets located in New Jersey; obtaining from [defendant] an accounting of the Estate's New Jersey assets and his management of B&H and its related entities; obtaining from [defendant and his wife] an accounting of all gifts they received from [d]ecedent; obtaining information from [defendant] concerning the nature and extent of the Estate's interest in Tazz Mall, LLC, B&H Design and Construction Co., LLC[,] and any other entities; filing a lawsuit, if necessary . . . to compel such accountings and related discovery and filing all necessary tax returns as required by law and arrange for payment of any gift taxes, New Jersey and federal estate taxes that may be due with respect to the Estate's New Jersey assets or any gifts or loans made by [d]ecedent.

The scope of the authority granted the administrator was not raised until defendant moved for a stay pending appeal. The issue was discussed, but the judge chose not to make any alteration in the earlier order. In denying the motion for a stay, however, the judge did not preclude a future application from defendant to modify the order. This invitation was not accepted; defendant instead presses the point here.

Because the chancery judge was not given the opportunity to reconsider the scope of the authority granted the administrator, we choose not to consider the issue in the first instance. <u>See</u>

State v. Robinson, 200 N.J. 1, 19 (2009) (observing that "[t]he jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves"). In declining to consider the issue, we do not mean to suggest defendant may not seek or, for that matter, may not be entitled to relief from the chancery judge following our disposition of this appeal; we hold only that our consideration of the scope of the May 8, 2014 order is premature.[9]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9] We also denied defendant's motion for a stay except that we restrained the administrator from "disseminat[ing] any information" obtained from the parties pending further order. Despite this appeal's disposition, which would ordinarily terminate the partial stay, we nevertheless will permit the limitations we placed on the administrator to remain in effect for thirty days from today's date, after which it shall automatically expire unless extended by the chancery judge. We do this solely to allow for a prompt but unhurried motion regarding the scope of the May 8, 2014 order that defendant may now choose to file in the trial court.

A-4562-13T1