BENTLEY W. ROGERS et al., appellants,

*v.*

JONATHAN HAND et al., executors &c., respondents.

1. A testator gave to his housekeeper $1,000, absolutely, and the interest on $8,000 during her lifetime. She had occupied the position of housekeeper in his family for twenty years or more. She presented to the executors a claim for $3,000 and interest (*i. e.*, $500 a year for the preceding six years) for her services to the testator.—*Held*, that the executors, in the exercise of good faith and discretion, were justified, after she had threatened to bring suit on her claim, in compromising it for $3,000; that the testamentary gifts to her were not in satisfaction of her claim for services, and that a mere notice, given by the residuary legatees to the executors not to pay her claim, was not sufficient to prevent the executors from compromising it.

2. A commission of three and a half per cent. on $289,000 was approved, in a case where the executors had been compelled to carry on litigation; to investigate and ascertain exactly what land the testator owned, and to exercise a testamentary power to sell it.

---

Appeal from the decree of Cape May orphans court.

*Mr. D. J. Pancoast,* for appellants.

*Mr. W. E. Potter* and *Mr. P. L. Voorhees,* for respondents.

Rogers v. Hand.

## The Ordinary.

The controversy between the parties to this appeal is as to the allowance' to the respondents, executors of the late Edmond L. B. Wales, deceased, in their account, of the amount of $3,000, paid by them in compromise of a claim made by Mrs. Eliza Adams against the estate for services rendered by her as house-keeper for the deceased for six years next preceding his death; and also as to the amount of commissions which should be allowed to the respondents for settling the estate. The testator died August 19th, 1882, and the will was proved on the 30th of the same month. The appellants insist that the payment to Mrs. Adams ought not to have been allowed, and that the allowance of commissions is excessive, and they appeal accordingly.

The claim of Mrs. Adams was put in on oath before the expiration of the time limited by the order to limit creditors. It

---

Note.—As to the validity of a contract based on an executor's forbearance to sue, or extension of time for payment, *Yard* v. *Eland*, *1 Ld. Raym. 368; Young* v. *Mackall*, *4 Md. 362, 3 Md. Ch. 398; Clawson* v. *McCune*, *20 Kan. 337; Martin* v. *Turver*, *43· Miss. 517; Smarr* v. *McMaster*, *35 Mo. 349; Puckett* v. *James*, *2 Humph. 565;* see *Heath.* v. *Grinell*, *61 Barb. 190; Kennedy's Appeal*, *4 Pa. St. 149; Burnham* v. *Dalling*, *3 C. E. Gr. 132;* or receiving payment in depreciated currency, *Bailey* v. *Dilworth*, *10 Sm. & Marsh. 404; Smith* v. *Prothro*, *2 S. C. 371;* or in chattels, *Gulledge* v. *Berry*, *31 Miss. 346; Williams* v. *Maitland*, *1 Ired. Eq. 92;* or promissory notes, *Anderson* v. *Gregg*, *44 Miss. 170; Leland* v. *Manning*, *4 Hun 7.*

In *Murray* v. *Blatchford*, *1 Wend. 583,* a compromise with a debtor of the estate, made by two administrators against the consent of their co-administrator, and after notice by him of an application to remove them, one for insolvency and the other for incapacity, the compromise being made contrary to the wishes of one-third of the persons entitled to distribution, was sustained.

If for the benefit of the estate, an executor may compound or release a debt, *Blue* v. *Marshall*, *3 P. Wms. 381; Larue* v. *White; 8 Dana 45; In re Scott*, *1 Redf. 234; Gillespie* v. *Brooks*, *2 Redf. 349; Pusey* v. *Clemson*, *9 Serg. & R. 204; Bruner's Appeal*, *57 Pa. St. 46; Daniel* v. *Maclins*, *6 Munf. 61; Kee* v. *Kee*, *2 Gratt. 116; Stuyvesant* v. *Hall*, *2 Barb. Ch. 151;* see *Legh* v. *Holloway*, *8 Ves. 213; Hammond* v. *Hammond*, *L. R. (8 Irish Eq.) 322; Aikins* v. *Blain*, *11 Grant's Ch. 212; Fridge* v. *Buhler*, *6 La. Ann. 272; Verdier* v. *Simons*, *2 Mc-Cord's Ch. 385;* (but not his own debt, *De Cordova* v. *De Cordova*, *41 L T. (N. S.) 43; Baughn* v. *Shackelford*, *48 Miss. 255; Geigers* v. *Kaigler*, *9 S. C. 401)*; and so may a trustee, *Gorge* v. *Chansey*, *1 Ch. Rep. 125; Atty.-Gen.* v. *Launder-*

was for $500 a year for six years immediately preceding the
testator's death, and interest thereon. Mrs. Adams had been
the testator's housekeeper for from twenty to twenty-five years
before his death. He was a widower for about the last forty-
five years of his life. The appellants insist that the provision
made for her by his will should be held to be a satisfaction of
all claim on her part against his estate for services. By the
will, which was made in February, 1881, he gives to her $1,000
absolutely, and the interest of $8,000 for life. By a previous
provision therein, he directs that all his just debts and funeral
expenses be duly paid and satisfied by his executors as soon
after his decease as it can be done conveniently. There is no
statement, nor any indication whatever of any intention that the
gift to her shall be a satisfaction of any claim on her part
against the estate. The legacies cannot be regarded as a satis-
faction of the claim in question. The following considerations

*field, 3 Swanst. 416; Shepard v. Saltus, 4 Redf. 232; Livingston's Case, 34 N.
Y. 554; or an administrator, Pennington v. Healey, 1 Cr. & Mee. 402; Daven-
port v. First Cong. Soc., 33 Wis. 387; Boyd v. Oglesby, 23 Gratt. 674; Wool-
fork v. Sullivan, 23 Ala. 548; Henry County v. Taylor, 36 Iowa 259; Berry v.
Parkes, 3 Sm. & Marsh. 625; Long v. Shackelford, 25 Miss. 559; Wyman's Ap-
peal, 13 N. H. 18; People v. Pleas, 2 Johns. Cas. 376; Berrien's Estate, 16
Abb. Pr. (N. S.) 23; Alexander v. Kelso, 3 Bax. 311; see Clark v. Davis, 32
Mich. 154; De Diemar v. Van Wagenen, 7 Johns. 404; Patten's Goods, 1 Tuck.
56; (but not as to the real estate, Collins v. Carman, 5 Md. 503; Hunt v.
Thorn, 2 Mich. 213; Needham v. Belote, 39 Mich. 487; see Eagle v. Emmet, 4
Bradf. 117; Ludlow v. Cooper, 4 Ohio St. 1); or the heirs, Husband v. Epling,
81 Ill. 172; Ewing v. Handley, 4 Litt. 346; or legatees, Turner v. Campbell,
59 Ind. 279; Griffith v. Sheffield, 1 Eden 73; or a creditor of the estate, Wood
v. Westall, Younge 305; Portwood v. Outon, 3 B. Mon. 252; or a receiver, Hen-
derson v. Myers, 11 Phila. 616; see Suydam v. Receivers, 2 Gr. Ch. 276; or the
guardian of an infant, King v. King, 15 Ill 187; Edsall v. Vandemark, 39 Barb.
589; Graham v. Hester, 15 La. Ann. 148; Lippiat v. Holley, 1 Beav. 423;
Schee v. McQuilken, 59 Ind. 269, 276; see Brooke v. Lord Mostyn, 2 De G., J. &
S. 373, 33 Beav. 457, 473; Wilson v. Birchall, L. R. (16 Ch. Div.) 41; Walker
v. Ferrin, 4 Vt. 523; Underwood v. Brockman, 4 Dana 309; or its next friend,
Drake v. Fortune, 1 Moll. 201; Walker v. Walker, 3 Murph (N. C.) 265; but
see Isaacs v. Boyd, 5 Port. 388; Miles v. Kaigler, 10 Yerg. 10; or assignees in
bankruptcy or insolvency, Leeming v. Lady Murray, L. R. (13 Ch. Div.) 123;
Ex parte Magnus, 3 M., D. & De G. 693; see Bousfield v. Bousfield, 31 Beav.
591, 3 Mont. & A. 41; Ex parte Williams, 1 Mont. & A. 689; Burrill on As-*

Rogers *v.* Hand.

are apposite : The testator provides for the payment of his just debts before giving the legacies. The amount of the first-mentioned legacy ($1,000) is less than the amount of the debt ; and as to the other, a legacy of interest cannot be regarded as a satisfaction of a sum of money due absolutely from the testator to the legatee. Part of the debt was contracted after the will was made. The will was made a year and a half before the testator died. Mrs. Adams occupied the position of a servant to him. There is, in the will, no reference whatever to her service ; she is not even spoken of as his housekeeper. The rule of equity that where a debtor bequeaths to his creditor a legacy *simpliciter,* equal to or exceeding the amount of his debt, and of the same nature, it is presumed, in the absence of any intimation of a contrary intention, that the legacy was meant as a satisfaction of the debt, is not a satisfactory one. It would be far more in accordance with the principles of sound construction to hold that the legacy was intended as a bounty, and not as a satisfaction of in-

*signments (4th ed.) § 228; Watkins* v. *Wallace, 19 Mich. 57;* or a municipal corporation, *People* v. *Supervisors, 27 Cal. 656;* or county commissioners, *Shanklin* v. *Madison Co., 21 Ohio St. 575.*

As to the powers of executors who are directed by the will to compound debts &c., see *Ratcliffe* v. *Winch, 17 Beav. 217; In re Alexander, 13 Irish Ch. 137.*

An infant is not bound by a compromise, *Tipton* v. *Tipton, 3 Jones 552; Britton* v. *Williams, 6 Munf. 453;* but third persons cannot object, *Horine* v. *Horine, 11 Mo. 649;* see, however, *Hargrave* v. *Hargrave, 12 Beav. 408.*

A compromise by a trustee &c. may be allowed to stand as between him and those beneficially interested, *Forshaw* v. *Higginson, 8 De G., M. & G. 827; Bacot* v. *Heyward, 5 S. C. 441; Pool* v. *Dial, 10 S. C. 440;* see *Walker* v. *Symonds, 3 Swanst. 2; Alsager* v. *Johnson, 4 Ves. 217, 6 Ves. 748;* especially after the lapse of considerable time, *Yate* v. *Moseley, 5 Ves. 480; Manby* v. *Benicke, 3 Kay & J. 342; Villines* v. *Norfleet, 2 Dev. Eq. 167; Washburn* v. *Washburn, 4 Ired. Eq. 306.*

Whether *creditors* would also be bound by the lapse of time, see *Noell* v. *Robinson, 1 Vern. 455.*

In some states, express authority to compromise claims is given by statute to executors &c., *Pouce* v. *Wiley, 62 Ga. 118;* although such statutes have been held not to include claims *against* the estate, *Reitzell* v. *Miller, 25 Ill. 67; Clarke* v. *Hogle, 52 Ill. 427.* They do not interfere with the parties' common law right to compromise, *Chadbourn* v. *Chadbourn, 9 Allen 173; Chouteau* v. *Suydam, 21 N. Y. 179; Childs* v. *Updyke, 9 Ohio St. 333.—*Rep.

Rogers *v.* Hand.

debtedness, unless there appears to be an intimation that it was intended as payment, and not as a gift. But under the rule, very slight circumstances are sufficient to repel the presumption, and there are many strong ones here. There is no substance in the claim that the demand of Mrs. Adams was satisfied by the gifts to her in the will.

The appellants further object to the allowance of the claim on the ground that they, being interested in the estate (they are residuary legatees), notified the executors that they were opposed to the payment of the claim, and they insist that the executors having settled it after such notification, without its having been previously established by suit, cannot lawfully obtain allowance for it. It appears by the record that the appellants did so object, and that one of the executors informed them that the executors did not intend to pay the claim "unless all the heirs agreed to it," and also that they had notified Mrs. Adams that she must bring suit. They did so notify her, but before the time expired within which by law she was required under the notice to bring suit, and as she was about to commence an action, they, by the advice of counsel (and on their own judgment also), compromised the claim by agreeing to pay $3,000, without interest. There is no reason to doubt that they acted in good faith, and under the conviction that the claim would be established if it were permitted to go to suit. Nor is there anything in the case to show that they erred in judgment. There is no evidence that the claim was not an entirely just one. Opportunity was afforded in the proceedings under the exceptions, to produce evidence that the claim could not have been established, or ought not to have been paid or compromised ( *Vreeland* v. *Vreeland, 1 C. E. Gr. 512*), but no evidence on that head was adduced. The appellants appear to have relied wholly on the fact that they objected to the payment, and that one of them, in two of his letters to one of the executors, spoke (as they allege) of evidence which could be produced in opposition to the claim. But all that is said on that score, in one of the letters, is the expression of a belief that the testator had fully compensated Mrs. Adams for her services, and a threat of the production of evidence if suit were brought,

Rogers *v.* Hand.

which would cause scandal; nothing is said in reference to any evidence to support a legitimate defence, or impeach the validity of the demand. What was said in the other was, that they (the appellants) were in possession of evidence which they would produce at the proper time, if necessary, which they were satisfied would have a " damaging effect " on the claim. In all this there was nothing beyond a threat of scandal, intended to operate not as a defence to the claim, but *in terrorem*, as a deterrent to prevent suit. While executors should in such cases act circumspectly, and not disregard the protest of persons interested in the estate against the payment of disputed claims, they are not bound under such a protest to refuse to pay and submit to suit, if they are satisfied that resistance will be unavailing. Where they act in good faith, those who would impeach their conduct must show fraud or mistake, or that they have acted without authority, or contrary to law. They may compromise a lawsuit, may buy the peace of the estate, and extinguish even doubtful claims against it, provided they act discreetly and in good faith. *Meeker* v. *Vanderveer, 3 Gr. 392.* Mr. Shoemaker, one of the executors, in his testimony, says that they found no evidence of any payments to Mrs. Adams, nor anything which referred to any payments whatever to her ; that the executor made inquiries as to whether she could sustain her claim before they settled it, and that after those inquiries they came to the conclusion that if they paid the claim under the compromise it would cost the estate less than to stand a lawsuit. Mr. Hand, the other executor, says that after he had given the notice to Mrs. Adams to bring suit, he made fuller inquiry into the claim, and the relations between her and the testator. He also says that he found no evidence of any payment to her for her services as housekeeper for any part of the long period of time that she had lived with him, and that he had heard she had a claim before it was presented to the executors. He further says that he was " under the impression that the executors had a right, in their discretion, to pay a just claim whether the heirs said so or not, and hence he did not particularly inquire of them about the claim or the other claims." The case of *Ritter's Appeal, 23 Pa. St. 95,* was much relied upon by the appellant's

Rogers *v.* Hand.

counsel as holding that an executor who pays a claim against the estate, after notice from any person interested in the estate that such person desires that it be defended, and be not paid until after judgment, will not be allowed the claim in his account if he pays it without judgment. Of course that case is not authority here. It will be found, however, that it does not declare the doctrine imputed. It merely holds that where an executor or administrator pays a claim against an estate to which there may be a valid defence, and those interested, adversely, have stood by and permitted him to do so without notice to him of their wish that he should defend it, they cannot be heard to object to the allowance of the claim in his account. There the defence, which the appellants insisted that the administrator should have made, was the bar of the statute of limitations. As already remarked, there is no evidence that the claim in controversy here was not a just debt. On the contrary, the reasonable conclusion would be, from the admitted fact of the rendition of the services by the claimant and the want of any evidence of payment, that the claim was just and ought to have been paid.

Now, as to the commissions. The account, although it purports by its express terms not to be final, is nevertheless final as to all the matters contained therein. The receipts amount to $289,621.21½, and the disbursements, including commissions, to $224,695.67, leaving a balance of $64,925.54 to be disposed of according to the will. Of the receipts, about $61,000 were from government bonds and interest thereon, about $75,000 cash inventoried, and about $30,000 from good stocks and dividends thereon, and railroad bonds and interest—in all, about $169,000. The whole amount of receipts was, as above stated, $289,621.21½. The balance over the $166,531.05 was from bonds and mortgages, promissory notes, sales of personal property, sales of land &c. &c. The whole time occupied in the transaction of the business was about one year. About $20,000 in mortgages were transferred to residuary legatees on account of their legacies. The allowance of three and a half per cent. does not appear to me to be excessive. The executors have had charge of a large amount of money; have been compelled to bring and conduct

Rogers *v*. Hand.

·suits; have been compelled to make investigations so as to ascertain what land, exactly, the testator owned, and have had to sell land under the power given to them by the will &c. &c. For their pains, trouble and risk in the matter, I think the allowance made by the orphans court reasonable and proper.

The decree will be affirmed, with costs.