The complainants are the executors and trustees nominated in the will of Martin J. Sheridan, deceased, who died a resident of Lebanon, Hunterdon County, New Jersey, on May 18th, 1939. Diffident of the course of action they should pursue in the performance of their fiduciary duties in respect of the matters to be presently mentioned, they solicit advice and instruction.
The deceased devised and bequeathed the residue and remainder of his estate in trust with directions concerning the distribution of the net income as follows:
"1. If my wife, ADRIENNE W. SHERIDAN, shall survive me, the entire annual net income shall be paid to her during her lifetime.
"2. After the death of my said wife, or if she shall predecease me, then after my death, the said annual net income shall be paid until the termination of said Trust, as follows:
"(a) The sum of Thirteen Hundred Thirty-three and 33/100 Dollars ($1,333.33) per annum to my daughter, Phyllis S. Silvester, during her lifetime, and upon her death, or if she shall predecease me, then after my death, to her issue surviving in equal shares, per stripes and not per capita, and if there be no surviving issue of my said daughter, Phyllis S. Silvester, then said sum of $1,333.33 per annum shall be divided among and paid over to my then surviving child or children and the then surviving issue of any deceased child or children of mine, in equal shares per stirpes and not per capita.
"(b) The sum of Thirteen Hundred Thirty-three and 33/100 Dollars ($1,333.33) per annum to my daughter, Elinor S. Riley, during her lifetime, and upon her death, or if she shall predecease me, then after my death, to her issue surviving, in equal shares, per stirpes and not per capita, and if there be no surviving issue of my said daughter, Elinor S. Riley, then said sum of $1,333.33 per annum shall be divided among and paid over to my then surviving child or children and the then surviving issue of any deceased child or children of mine, in equal shares per stirpes and not per capita.
"(c) The remainder of said annual net income over and above the sum of Twenty-six hundred Sixty-six and 66/100 Dollars ($2,666.66), shall be divided into so many equal parts or shares that there shall be an equal part or share for each surviving child of mine and an equal part or share for the issue, collectively, of each deceased child of mine, and a part or share of such annual net income shall be paid to each surviving child of mine and a part or share to the issue, collectively, of each deceased child of mine, in equal shares, per stirpes and notper capita."
The eighth paragraph of the decedent's will is also pertinent: *Page 290 
"Eighth: If, at the time of my death, there is any indebtedness owing to me by my son, Martin J. Sheridan, Jr., evidenced by notes secured or unsecured, it is my wish and desire, and I hereby direct my Executrix, Executor and Trustees, to extend the time for the repayment of such indebtedness, from time to time, with interest at the rate of four and one-half per cent per annum, which interest is to be paid by my said son quarter-annually until such time as my said son shall have repaid said indebtedness; provided, however, that upon the death of my said son the said indebtedness, evidenced by notes, secured or unsecured, shall be liquidated as soon as conveniently possible, due consideration being given to the time required to settle the estate of my said son, without sacrificing such estate. If my said son shall, at any time, sell the dairy farm located in the Township of Clinton, County of Hunterdon, State of New Jersey, owned by him, or sell or dispose of any business now or hereafter conducted by him in conjunction with such dairy farm, the said indebtedness, if any, shall be liquidated to the extent that the proceeds from such sale will enable my said son to pay off said indebtedness. I admonish my said son to reduce the said indebtedness, if any, from time to time to the extent that his resources will permit, to the end that said indebtedness, if any, to my Estate shall be liquidated as speedily as possible."
The testator's son, Martin J. Sheridan, Jr., survives and his indebtedness to his father's estate, evidenced by promissory notes, totals $94,102.50. In the circumstances, this indebtedness of the son was transferred by the executors to the trustees and is now apparently regarded as a part of the corpus of the trust.
During the life of the testator, the son acquired 315 acres of farm land in Hunterdon County where he has undertaken the production of milk and other dairy derivatives. The real and personal property as a unit has a recent appraisal value of $100,356.43. This is the dairy farm to which the testator referred in the eighth paragraph of his will. It has not been sold. However, despite the installation of the most modern appointments and the adoption of neoteric practices, the enterprise has been continuously unprofitable. It is represented that the real estate is now encumbered by mortgage liens amounting in the aggregate to $68,250; that the acknowledged debts of Martin J. Sheridan, Jr., now total $264,698.49, and that he has no assets other than those to which reference has already been made, except a parcel of real estate at or near Plainfield valued at $3,200. With the *Page 291 
acquiescence of his mother, the sole life beneficiary, he has omitted to make the contemplated quarterly interest payments on his debt owing to the estate. He has expressed to the complainants his eagerness to accomplish some fair and equitable arrangement with his creditors which will enable him to retain and pursue his dairy business, from which he derives maintenance for himself and his family. He offered to pay $5,000 in extinguishment of his indebtedness to the estate. At the final hearing he substituted for that offer a proposal to assign to the complainants his interest as a beneficiary under the will of his father to the extent of his indebtedness to the estate.
The complainants apprehend that Martin, Jr., is inextricably enmeshed in insolvency, and they pray for a determination (a) of the testator's intent and the meaning to be attributed to the language of paragraph eight of the will; (b) of their authority to compromise the claim; and (c) if clothed with authority, whether they should accept the proposed assignment of the debtor's interest under the will in settlement of the indebtedness.
It can be immediately assumed that executors and trustees who act in good faith within the sphere of their powers, and exercise the care, circumspection and judgment of persons of ordinary prudence and sagacity, cannot be justifiably reproached.Heisler v. Sharp, 44 N.J. Eq. 167; 14 Atl. Rep. 624; affirmed,45 N.J. Eq. 367; 19 Atl. Rep. 621; Monroe v. Osborne, 43 N.J. Eq. 248; 10 Atl. Rep. 267; Smith v. Jones, 89 N.J. Eq. 502;104 Atl. Rep. 380; In re Leonard, 107 N.J. Eq. 235;152 Atl. Rep. 243. At common law the power of an executor or administrator to compromise or waive a claim due the estate was subject only to the risk of personal liability if, on final settlement, it should be adjudged that the compromise or waiver was fraudulently or improvidently made. Blue v. Marshall, 3 P. Wms. 381; 24 Eng.Reprint 1110; Pennington v. Healey, 1 Cromp. M. 402; 149 Eng.Reprint 455. That an executor or administrator ordinarily can release or compromise a cause of action accruing to his decedent is the established law of our state. Meeker v. Executor ofVanderveer, 15 N.J. Law 392; Rogers *Page 292 
v. Hand, 39 N.J. Eq. 270; Manns, Adm'r, v. A.E. Sanford Co.,82 N.J. Law 124; 81 Atl. Rep. 491.
In Brown v. Brown, 72 N.J. Eq. 667; 65 Atl. Rep. 739,
(decided in 1907), Vice-Chancellor Garrison stated (at p. 670):
"The complainants desire to be instructed as to their duties in respect to this matter.
"First, they ask whether, under the fourteenth paragraph of the will, they are empowered to discharge the debt due by Lewis M. Brown (testator's son) to the estate.
"While executors have the power to compromise, compound or release claims against the estate at common law, and in many jurisdictions by statute, and while the power may be conferred as in this case, by will, I am of opinion that the court should not, in advance, advise them how they should exercise their discretion, and would, when it had been exercised, approve or disapprove of their conduct, after considering all the facts, making the test whether their action was for the best interest of the estate or not.
"The general principles and the authorities will be found collected in 11 Am. Eng. Encycl. L. 2d 926-929, inclusive.
"The court, in the matter of giving instructions or directions to trustees under a will, exercises its discretion as to whether it will advise or direct upon the matters submitted to it, and I do not think it would be discreet for the court to advise these complainants to make a compromise or to release Lewis M. Brown from whatever obligation he is under to the estate. I think the complainants, at their own peril, must use their own judgment with respect to the power to compromise, compound and release. In the event of their not exercising their power, and of their refusing to compromise, compound or release the obligations of Lewis M. Brown to the estate, it becomes necessary to deal with the other provisions of the will above quoted."
Since that decision, the legislature has evinced a purpose to broaden the opportunity of fiduciaries to apply to the courts for the construction of wills and for directions appertaining to their administrative duties. P.L. 1915 ch. 116 p. 184; In reUngaro, 88 N.J. Eq. 25; 102 Atl. Rep. 244; *Page 293 R.S. 2:26-68 et seq.; N.J.S.A. 2:26-68 et seq.; Joselson v.Joselson, 116 N.J. Eq. 180, 183; 172 Atl. Rep. 812; Taylor v.McClave, 128 N.J. Eq. 109, 113; 15 Atl. Rep. 2d 213.
The statute, R.S. 3:15-1; N.J.S.A. 3:15-1, effective prior to the death of this decedent (Cf. In re Braunstein, 112 N.J. Eq. 315; 164 Atl. Rep. 431) since amended (P.L. 1941 p. 614; P.L.1942 p. 549), supplies fiduciary representatives of a decedent's estate with authority to compromise, settle or adjust claims of or against the estate, and designs a proceeding in which the proposed compromise can be submitted for confirmation.
The probationary compromise here submitted for consideration implicates the interests of several infant defendants, and in the circumstances I shall express my conception of its propriety and expedience.
What beneficial equation can the decedent's estate derive from entering into the proposed compact? Irrespective of agreement, and unless the testator manifests an intention to discharge the debt or to entitle the legatee to enjoy his bequest notwithstanding his failure to pay the debt, the law itself ordains that a legatee indebted to the testator under whose will he is entitled to a legacy, shall accept his debt in payment of his legacy, or his legacy may be applied in discharge of his debt. Snyder v. Warbasse, 11 N.J. Eq. 463; Voorhees v.Voorhees' Executor, 18 N.J. Eq. 223; Brokaw v. Hudson'sExecutor, 27 N.J. Eq. 135; Denise's Executors v. Denise,37 N.J. Eq. 163; First National Bank of South River v. Hurley,122 N.J. Eq. 53; 191 Atl. Rep. 858; In re Kraeuter, 125 N.J. Eq. 120;4 Atl. Rep. 2d 383; affirmed, 127 N.J. Eq. 19;11 Atl. Rep. 2d 28; Restatement, Trusts § 251-b; 4 Page on Wills458 § 1569.
This so-called "right of retainer" may be exercised by the executors or trustees against the debtor even where the remedy at law to collect the debt is barred by the statute of limitations.In re Kraeuter, supra. It is not defeated by the bankruptcy of the debtor. Snyder v. Warbasse, supra; In re Sawin's Estate,19 N.Y.S. 2d 465, 469; In re Van Noostrand Will, 29 N.Y.S.
2d 857, 864; In re Chamberlin's *Page 294 Will, 36 N.Y.S. 2d 209, 210; Restatement, Trusts §251-d; 1 A.L.R. 1043; 30 A.L.R. 781; 75 A.L.R. 889;110 A.L.R. 1389.
It is therefore evident that the proposed agreement does not carry with it any additional advantage available to the complainants in the recovery of the debt. Giving away anything for nothing is not a prudent transaction on the part of those acting in a fiduciary capacity. Essentially, such an operation is not a compromise. The agreement at present contemplated has little, if anything (except some possible tax salvage) to recommend its approval. It will not be approved.
The obligation of the complainants is to act in conformity with the premeditated and expressed desire of the testator. The intent of the testator relative to any existing debts owing to him by his son is not obscure. Assuredly, any notion that the testator intended to annul the indebtedness of his son is completely dispelled by the several expressions which may be excerpted from the eighth paragraph of his will: "I admonish my said son to reduce the said indebtedness, if any, from time to time to the extent that his resources will permit, to the end that said indebtedness, if any, to my Estate shall be liquidated as speedily as possible."
The testator's request that upon a sale of the farm or the dairy business, the proceeds should be applied on account of the indebtedness, is likewise informative of his expectation that the debt would be paid. Equally manifest is the presupposition of the testator that his son would be unable immediately to discharge his obligation, for he directed his representatives "to extend the time for the repayment of such indebtedness, from time to time * * *." Indeed, the testator contemplated that the debt might not be satisfied during the life of his son, and in such event he purposed that the collection of it should be accomplished "without sacrificing such (his son's) estate."
However, it is indubitable that the testator desired his son to "reduce" the indebtedness as "speedily" as his "resources" would "permit." Lacking resources, the obligation was to be extended "from time to time." Grace, not immunity. *Page 295 
It cannot be inferred that the complaisance of the testator toward his son was intended to overreach its object and result in a forfeiture of this asset of the estate. The testator reposed confidence in the judgment and discretion of the complainants, who have undertaken to administer the estate in conformity with his wishes. Reasonable efforts should be exerted by them to safeguard and collect the debt due the estate. The financial circumstances of the son, of course, constitute a predominant factor in determining the course of future action. That task devolves upon the testator's chosen representatives.
"The trustee is under a duty to take such steps as are reasonable to realize on claims which are a part of the trust estate. This does not mean, however, that he is necessarily under a duty to bring actions to enforce such claims. If, indeed, the only reasonable step under the circumstances would be to bring an action to enforce a claim which he has as trustee, he is under a duty to bring such an action. Where, however, it is reasonably prudent to compromise a claim, the trustee has power to do so."2 Scott on Trusts 1045 § 192.
The jurisdiction of this cause will be retained to enable the complainants to apply to this court for such further advice or instructions in the matters comprehended by the bill as the eventualities may reasonably require.