**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2760-18

IN THE MATTER OF THE
ESTATE OF BYUNG-TAE OH,
deceased.

_____

Argued February 23, 2021 – Decided March 23, 2021

Before Judges Fisher, Gilson, and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000018-13.

William D. Grand argued the cause for defendant-appellant/cross-respondent Hyung Kee Oh (Greenbaum, Rowe, Smith & Davis, LLP, attorneys; William D. Grand, of counsel and on the briefs; Olivier Salvagno, on the briefs).

Solomon Rubin argued the cause for plaintiff-respondent/cross-appellant Wonki Oh (Matthew Jeon, on the briefs).

Alexander G. Benisatto argued the cause for respondent Stuart Reiser, court-appointed administrator of the Estate of Byung-Tae Oh (Shapiro, Croland, Reiser, Apfel & Di Iorio, LLP, attorneys; Stuart Reiser and Alexander G. Benisatto, on the brief).

PER CURIAM

In this probate matter, defendant Hyung Kee Oh appeals from a final judgment awarding counsel fees to his brother, plaintiff Wonki Oh. He contends that plaintiff was not entitled to a fee award because he did nothing to benefit the estate of their father, Byung-Tae Oh. Plaintiff cross-appeals, arguing the trial court erred both by approving the report of an administrator appointed to marshal decedent's New Jersey assets and by awarding counsel fees to defendant. We affirm in part and reverse in part, concluding that the judge properly approved the administrator's report but that fees were erroneously awarded to defendant and that plaintiff's fee request requires further analysis.

A brief history of the parties' disputes and how the matter finally wound its way back to this court[1] will be helpful to the reader in understanding our disposition of the appeal and cross-appeal.

Byung-Tae Oh (decedent), a resident of the Republic of Korea, died intestate in Seoul on February 6, 2012. He was survived by his wife of over thirty years, Hie Sung Lee, and three children from his first marriage: plaintiff; defendant; and a daughter, Heinjoo Oh. Under Korean law, the three children

---

[1] For part of the story, see In re Estate of Byung Tae-Oh, 445 N.J. Super. 402 (App. Div. 2016).

A-2760-18

were entitled to equal shares of decedent's estate and his wife was entitled to one and one-half times the share inherited by each child. At the time of death, decedent's estate was valued at approximately $31,000,000.

Decedent's primary asset was Dong Nam Housing Industrial Co., Ltd. (Dong Nam Housing), a successful Seoul-based real estate and construction company in which decedent had been both majority shareholder and chief executive officer. Defendant worked for several years at Dong Nam Housing as a salaried employee. During his lifetime, decedent gifted defendant 20,000 shares of stock in Dong Nam Housing; plaintiff never worked at Dong Nam Housing and was not given any company stock.

Nine days after decedent's death, the family met to discuss the distribution of the estate. At this meeting, which plaintiff secretly recorded, plaintiff demanded that his stepmother relinquish to him her entire inheritance, claiming without proof that this was his father's dying wish. At length, plaintiff expressed his belief that he, the eldest son, had been treated unfairly by decedent who had denied him a position at Dong Nam Housing, choosing instead to further the career of, and lavish gifts on, defendant. In making these claims, plaintiff acknowledged he had not always been an obedient son and that his father had

financially bailed him out on several occasions. The family meeting ended when decedent's widow refused to agree to plaintiff's demands.

Flashing back a few decades, defendant and his wife Sung Hee Park came to the United States in May 1992 with student visas to pursue doctoral degrees at the University of Connecticut. Although defendant had a full tuition scholarship and worked as a research assistant, decedent assisted them financially. Defendant graduated in 1998.

After his student visa expired, defendant obtained an E-2 visa, which required that he invest money and start a business in the United States.[2] He secured a commercial loan and, in May 1999, established B&H Consulting and Development LLC (B&H), a real estate development and construction company, in New Jersey. In the years that followed, B&H became a member of three other New Jersey entities: Tazz Mall, LLC, B&H Design and Construction Co. LLC (B&H Design), and Palcon Development, LLC. By 2013, B&H had ceased its construction activities and focused primarily on Tazz Mall.

According to defendant, none of the money used to start B&H came from decedent or Dong Nam Housing. But, in fact, on December 8, 2001, decedent wired $900,000 from his personal Korean bank account to B&H's corporate bank

_____

[2] Defendant is now a permanent resident of the United States.

account. Although defendant claimed this money was a gift from his father, he: (1) could not explain why the money had been sent to B&H's business account as opposed to his personal account; (2) was unable to produce any documentation confirming the money was a gift; and (3) acknowledged that neither he nor decedent filed a gift tax return in either the United States or Korea with respect to this fund.

Defendant also knew that, starting in 2001, decedent had annually reported (in Korea) that he had made a direct overseas investment of $900,000 in B&H, and owned 40.8% of the company. Defendant was aware that in August 2012, decedent's widow filed an estate tax return, which stated that decedent's gross estate was approximately $31,000,000, including his $900,000 investment in B&H. B&H business documents, however, did not reflect decedent's interest, and decedent never received any income from B&H during his lifetime.

In 2003, defendant formed Dong Nam New Jersey LLC (Dong Nam NJ), a subsidiary of Dong Nam Housing. Dong Nam Housing owned 98% of Dong Nam NJ, while defendant and his wife owned one percent each; decedent had no individual interest in Dong Nam NJ. Defendant served as the managing member of both B&H and Dong Nam NJ, and the two companies shared a business relationship.

A-2760-18

In January 2013, plaintiff filed a lawsuit in Korea to determine the value of the estate and the inheritance to which each beneficiary was entitled. He alleged that defendant's share had to be reduced because decedent had already given defendant part of his inheritance through inter vivos bequests, known as "special benefits" in Korea. Plaintiff alleged that defendant received special benefits when decedent gave him: $1,000,000 for living expenses when he moved to the United States; $1,304,000 as a gift to start B&H; and money to build a home in Bergen County. Plaintiff also alleged that decedent had invested $900,000 in B&H.

Around the same time, plaintiff also filed a verified complaint in the Probate Part; he claimed that decedent had New Jersey assets, which gave New Jersey ancillary jurisdiction over decedent's interests in B&H and Dong Nam NJ, and he sought the appointment of an administrator under N.J.S.A. 3B:10-7 to marshal these New Jersey assets. Plaintiff claimed that decedent: made an initial capital contribution to B&H of more than $2,200,000, which was comprised of a gift to defendant of $1,304,000 and the $900,000 transfer; made an initial capital contribution to Don Nam NJ of more than $5,000,000; and gave defendant and his wife other gifts of several millions of dollars, which were advances on defendant's inheritance. He asserted that defendant had refused to

provide accurate and complete information concerning the extent of decedent's interests in B&H, Dong Nam NJ, Tazz Mall and B&H Design, and defendant's management of these companies. Decedent's widow and the parties' sister disagreed with plaintiff's claims in the verified complaint. In his answer to the complaint, defendant denied that decedent had any assets in New Jersey and maintained that the $900,000 transferred to B&H in 2001 was a gift.

The discovery process proved difficult. On July 11, 2013, Judge Robert P. Contillo ordered defendant to produce all documents pertaining to the $900,000 transfer and any other transfers or gifts from decedent. In March 2014, shortly before expiration of the discovery deadline, both parties moved for summary judgment. Judge Contillo granted summary judgment in plaintiff's favor, concluding that plaintiff had successfully demonstrated decedent's $900,000 transfer constituted an investment in B&H and that the estate was entitled to receive a 40.8% interest in that entity. The judge also determined that he could not find that:

> any interest in [Dong Nam NJ] necessitates the appointment of an administrator. Neither party has raised an allegation that the [d]ecedent personally owned any percentage of this LLC. Instead, he indirectly had an interest in this LLC through Dong Nam Korea, a Korean corporation managed by the [d]ecedent in which he was the majority shareholder. The [c]ourt does not find that a Korean corporation

7

> having an interest in a New Jersey LLC is [d]ecedent's "personal property in this State" that would warrant relief under N.J.S.A. 3B:10-7.

Judge Contillo appointed an administrator – Stuart Reiser, Esq. – to determine the extent of any estate assets in New Jersey and whether decedent made any inter vivos gifts to defendant.

Defendant appealed the judge's determination about the $900,000 investment; plaintiff did not seek review of the court's finding that decedent had no personal interest in Dong Nam NJ. While defendant's appeal was pending, he unsuccessfully moved to limit the administrator's authority pending rulings from the Korean court. On February 18, 2015, Judge Contillo granted defendant's motion for entry of a confidentiality order. According to this order, all documents that had been or would be provided by the administrator to plaintiff or his counsel were not to be "disseminated or disclosed by the plaintiff or his counsel, in whole or in part, to any person or entity not a party to this action, nor to any other court, without leave of court."

Nearly a year later, the administrator filed a separate action against defendant in General Equity,[3] seeking to compel defendant's cooperation with his discovery requests and facilitate the completion of his forensic investigation.

---

[3] Reiser v. Oh, No. BER-C-10-16.

In his complaint, the administrator alleged that: defendant had not complied with his request for production of documents in the probate action; defendant had insisted that this separate action was necessary so that he would have a forum for preserving his objections to discovery requests; and defendant continued to operate B&H without regard to the estate's interest in the company. Plaintiff attempted to intervene in that action without success.

Later, the administrator moved to compel defendant's cooperation with his discovery requests but withdrew the motion when defendant finally agreed to provide some documents relating to Dong Nam NJ.

In May 2016, we affirmed the trial court's grant of summary judgment to plaintiff. In re Estate of Byung Tae-Oh, 445 N.J. Super. 402 (App. Div. 2016). Following that decision, defendant filed a brief in Korea withdrawing his previous assertion that decedent did not have a 40.8% interest in B&H.

In the Fall of 2016, defendant learned that, in violation of the 2015 confidentiality order, plaintiff had used numerous confidential B&H financial records produced by defendant in filing two criminal complaints alleging embezzlement and other illegal activities against defendant with the Seoul Northern District Prosecutor's Office. The first complaint contained forty-eight counts and pertained to actions taken by defendant with respect to Dong Nam

9

NJ and B&H; the second addressed twenty-nine financial transfers between Dong Nam NJ and B&H.

Police interviewed plaintiff, defendant, and the enrolled agent representing Dong Nam Housing, and defendant also provided B&H's and Dong Nam NJ's accounting books and records for review. Following the investigation, the Korean prosecutor concluded in August 2017 that there was "no suspicion of crime" and declined to indict defendant on either complaint. Plaintiff appealed, without success, the non-indictment decision as to the first complaint.

In February 2017, on being advised of these events, Judge Contillo ordered plaintiff to pay $23,434.40 of defendant's counsel fees. The judge also modified the confidentiality order as follows:

> a. From this date forward, neither counsel for [p]laintiff nor the . . . [a]dministrator, shall disseminate, disclose, or provide to [p]laintiff any of the information or documents furnished to the . . . [a]dministrator by [d]efendant or by third parties (including, but not limited to, banking institutions, accounting firms, or law firms) related to[:] (1) B&H . . . and its related entities; (2) Don Nam [NJ] . . . ; (3) [d]efendant; or (4) any of the defendants in the action entitled Reiser v. Oh, et al., Docket No. BER-C-10-16.
>
> b. From this date forward, the [l]ocal [a]dministrator, in his discretion, may provide information furnished to him by [d]efendant or by third parties (including, but not limited to, banking institutions, accounting firms, or law firms) to New Jersey counsel for [p]laintiff . . .

> except for information or documents related to Dong Nam [NJ] . . . , which shall not be disclosed.

Later in February 2017, plaintiff and his attorney met with the administrator, who advised the estimated value of B&H was $5,000,000 to $7,000,000. The administrator expressed his concerns about filing a federal estate tax return, which was required if the value of the estate exceeded $5,120,000. Apparently misunderstanding or perhaps misrepresenting what the administrator said, in August 2017, shortly after the Korean authorities decided not to indict defendant, plaintiff's Korean counsel wrote to the Korean court stating that the administrator had determined that defendant had "embezzled" $5,000,000 from B&H and was obligated to repay that amount. The administrator wrote to the Korean court to advise that plaintiff's embezzlement allegation was false.

The following month, the Korean court entered a judgment finding that decedent's estate held a 40.8% interest in B&H, which it valued at $900,000, and ruling that plaintiff had not established decedent gave defendant inter vivos bequests of: $1,000,000 towards his tuition and living expenses when he moved to the United States; $1,304,000 to establish B&H; or money to build a home. Plaintiff appealed to a higher Korean court.

In September 2017, the administrator voluntarily dismissed the General Equity action he had commenced against defendant. In January 2018, the administrator issued a report advising that he had hired a forensic accountant and reviewed: B&H's state and federal tax returns from 2001 through 2016; B&H's QuickBooks data records from 2006 through March 7, 2017; B&H's checking account statements and canceled checks for the period 2008 through 2017; information concerning the Tazz Mall, Palcon, and other related entities; project files for the approximately fifty separate real estate projects undertaken by B&H from 2000 through 2017; deeds, leases, and HUD statements for the various properties; miscellaneous pleadings and transcripts filed in the New Jersey and Korean actions; documentation supplied by counsel detailing areas of inquiry and other suggestions; entity formational documents and deeds; and documents concerning the source of certain money inflows into B&H and the repayment of loans. He concluded that decedent made no gifts to defendant, the estate had no assets in New Jersey other than the 40.8% interest in B&H, and the only tangible business assets owned by B&H were the Tazz Mall and $101,304 in cash. He also determined that at decedent's date of death the Tazz Mall had a fair market value of $2,810,000, and "as to the Estate's interest in B&H, . . . the total owner equity in B&H as of December 31, 2016, was

12

$1,224,321.93." The administrator further noted that defendant had agreed not to challenge these findings if the report received court approval.

The administrator acknowledged that defendant and his wife had operated B&H without consideration for any other owners. But he also found no evidence of malfeasance or that the relatively low profitability of B&H between 2000 and 2017 resulted from anything other than outside economic factors. The Quick Books data records were consistent with the underlying banking and checking records that were available, and there were no unreported deposits or disbursements or overstated liabilities. Nonetheless, after "giving due consideration to many years of records and thousands of transactions and journal entries," the administrator determined that "in view of the [e]state's ownership interest in B&H, it would be appropriate for [defendant] to make a capital contribution of $1,200,000 to B&H to restore his deficit capital account." The administrator believed that this contribution, which defendant had agreed to make, would "restore to B&H's balance sheet an amount close to the [e]state's aggregate share of B&H's income from 2001 forward." The administrator advised that the $1,200,000 contribution would be placed in escrow, with $275,000 earmarked to pay approved administrative expenses and professional

fees, and $925,000 earmarked to pay any federal estate taxes, interest and penalties that might be due from the estate.

In January 2018, the administrator moved for: approval of his report, including the proposed $1,200,000 settlement; instructions regarding future estate administration; and a third allowance of fees and costs. Plaintiff opposed the motion and cross-moved for: the vacation of the amended confidentiality order; production of all materials underlying the administrator's forensic report and proposed settlement; and 150 days to review these materials with his accountants.

Defendant opposed plaintiff's cross-motion. The administrator also responded to plaintiff's cross-motion, asserting that: plaintiff had "maintained a remarkably obstinate and impractical approach to the many efforts made by [him] to reach a consensual and amicable resolution of the numerous . . . issues which have been presented"; plaintiff never provided him with any hard evidence of additional New Jersey assets belonging to the estate or other gifts made by decedent to defendant; plaintiff could have inquired into these matters himself before he moved for summary judgment in 2014; plaintiff was in possession of the underlying financial data and documents that formed the basis of the forensic report; plaintiff appeared to want to turn this ancillary proceeding

into a never-ending "circular chase to prove a construct/thesis of his own creation so that he can continue to strategically exert pressure on his family and stepmother in the probate proceedings pending in the Republic of Korea"; and plaintiff failed to take into consideration the substantial costs the estate would incur if the investigation were to continue.

During this round of motions, Judge Contillo amended the confidentiality order to permit plaintiff's counsel to provide plaintiff with all the materials submitted in connection with the motion and cross-motion. After this exchange of information, the parties and the administrator filed supplemental submissions. Defendant asserted that: plaintiff's claim that decedent gave defendant inter vivos bequests of $1,300,000 for B&H and $1,000,000 for living expenses had been addressed by the Korean family court and rejected for lack of evidence to support plaintiff's views; plaintiff's claims that defendant had embezzled from B&H and Dong Nam NJ and engaged in illegal transactions had been raised in his criminal complaints against defendant and investigated and rejected by the Seoul Prosecutor's offices; the Korean court had relied on the estate's tax return, which was twice examined by a tax officer, in determining that the estate's interest in B&H was worth $900,000; B&H's books reflected no impropriety in connection with the construction of defendant's home; and the Seoul District

15

Tax Office had conducted a comprehensive audit of Dong Nam Housing, including real estate projects undertaken by Dong Nam NJ, and had determined, based upon records provided by defendant, that Dong Nam NJ had properly reported its profits.

The motions were argued in April and June 2018. Prior to the second day of argument, a Korean appellate court rejected plaintiff's appeal, and, in October 2018, the Korean Supreme Court affirmed that decision. As a result of the Korean Supreme Court's ruling, decedent's 40.8% interest in B&H was split, so that 20.15% went to his widow, 2.27% to defendant, 7.75% to plaintiff, and 10.60% to the parties' sister. Decedent's widow and daughter subsequently assigned their shares to defendant, resulting in defendant and his wife together owning 92.25% of B&H.

On July 30, 2018, Judge Contillo rendered a decision and entered an order, which approved the administrator's report and settlement and allowed payment of outstanding fees from the capital contribution. By separate order of the same date, the judge denied plaintiff's cross-motion.

On August 31, 2018, plaintiff moved for counsel fees pursuant to Rule 4:42-9(a)(2), seeking an award of fees from the outset of this litigation through July 30, 2018, alleged to amount to $1,441,139.96. The administrator filed a

16

certification expressing his general support for plaintiff's motion because plaintiff had benefited the estate. Defendant opposed plaintiff's motion, arguing plaintiff's motion was untimely and plaintiff was ineligible for a fee award; defendant also cross-moved for an award of $1,440,557.90 in counsel fees, in the event plaintiff's motion was successful. Plaintiff explained the motion was filed eleven days after twenty days from the July 31, 2018 order, but explained the delay was a result of his lead counsel's illness and death on September 15, 2018. The administrator generally supported defendant's motion for fees because, after initially taking positions adverse to the estate, defendant had ultimately cooperated with his investigation.

Judge Contillo retired and another judge considered these competing fee applications. On the motions' return date, the judge heard argument, during which the administrator offered to go through the time records produced by counsel and calculate the fees associated with the period during which each party had been cooperative and acted for the estate's benefit. The judge acceded to this suggestion.

In November 2018, the administrator filed a certification in which he fixed the time periods during which plaintiff and defendant had cooperated with him. Without offering an opinion as to whether the fees were reasonable, the

17

administrator provided spreadsheets detailing the fees charged during each of the specified periods, totaling $1,049,589.14 for plaintiff and $978,157.99 for defendant.

Plaintiff advised the judge that he accepted the administrator's recommendations. Defendant argued that it was the court's responsibility to initially determine whether there was a legal basis to award fees. He also emphasized, among other things, that the administrator had simply selected a firm date of January 5, 2017, and had not analyzed the specific billing entries. Defendant further argued there was no basis for any award of fees to either party and that he only filed his cross-motion for fees in case the court awarded fees to plaintiff.

On January 14, 2019,[4] the judge entered an order awarding plaintiff $1,049,589.14, in counsel fees (all the fees he had incurred through January 4, 2017, as identified by the administrator) and awarded defendant $978,157.99 in counsel fees (all the fees he had incurred from January 31, 2016, forward, as identified by the administrator).

---

[4] While the order is dated November 2, 2018, it was entered and filed on January 14, 2019.

A-2760-18

Defendant appeals, seeking our review of the January 14, 2019 order, while plaintiff cross-appeals, seeking our review of the January 14, 2019 order, and parts of the orders entered on February 28, 2017, and July 30, 2018. Specifically, defendant argues in his appeal:

> I. THE TRIAL COURT'S AWARD OF LEGAL FEES AND COSTS IN FAVOR OF PLAINTIFF SHOULD BE REVERSED BECAUSE THE TRIAL COURT DID NOT PERFORM THE ANALYSIS REQUIRED BY RPC 1.5(a).
>
> II. THE TRIAL COURT'S AWARD OF LEGAL FEES AND COSTS IN FAVOR OF PLAINTIFF SHOULD BE REVERSED BECAUSE PLAINTIFF'S APPLICATION FOR SAME WAS FILED OUT OF TIME.[5]

In plaintiff's cross-appeal, he argues:

> I. THIS COURT SHOULD ONLY REVIEW A TRIAL COURT'S AWARD OF LEGAL FEES FOR ABUSE OF DISCRETION, WHICH DOES NOT EXIST AS TO THE LEGAL FEES AWARDED TO PLAINTIFF.
>
> II. THE LEGAL FEES AWARDED TO PLAINTIFF WERE REASONABLE.
>
> III. THE TIME FOR PLAINTIFF TO APPLY FOR LEGAL FEES DID NOT START TO RUN UNTIL THE COURT APPROVED THE ADMINISTRATOR'S REPORT.

---

[5] For brevity's sake, we have omitted the subparts to Point II.

A-2760-18

IV. THE TRIAL COURT INCORRECTLY AWARDED LEGAL FEES TO DEFENDANT.

V. THE TRIAL COURT SHOULD NOT HAVE DEFERRED TO THE ADMINISTRATOR'S DECISION TO SETTLE WITH DEFENDANT, BECAUSE HE CONDITIONED SETTLEMENT ON DEFENDANT NOT CONTESTING HIS FEES. AS SUCH, THE ADMINISTRATOR WAS NOT AN IMPARTIAL PARTY TO THE SETTLEMENT.

VI. BEFORE APPROVING THE ADMINISTRA-TOR'S REPORT, THE TRIAL COURT SHOULD HAVE GRANTED PLAINTIFF'S REQUEST FOR THE DOCUMENTS THAT WERE THE BASIS OF THE REPORT, SUBJECT TO A NEW CONFIDENTIALITY ORDER THAT WOULD ALLOW PLAINTIFF TO SHARE THE DOCUMENTS WITH A FORENSIC ACCOUNTANT AND APPRAISER.

VII. THE ADMINISTRATOR WAS NOT A NEUTRAL PARTY REPRESENTING PLAINTIFF'S INTERESTS.

VIII. THE TRIAL COURT INCORRECTLY APPLIED THE DOCTRINE OF COLLATERAL ESTOPPEL IN CLAIMING THAT THE COURT'S SUMMARY JUDGMENT RULING BARRED PLAINTIFF FROM ASSERTING THE ESTATE HAD AN INTEREST IN DONG NAM NJ.

We start by rejecting plaintiff's Points V, VI, and VII, all of which relate to Judge Contillo's approval of the administrator's report, which incorporated the settlement that required defendant's increase in his capital contribution to

20

B&H; we find these arguments lack sufficient merit to warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

We add only that, as to plaintiff's Points V, VI, and VII that the administrator was required to exercise his power "in good faith and [with] reasonable discretion," N.J.S.A. 3B:14-23, that the record demonstrates the administrator's adherence to this standard, and that, as once said by Judge Jayne, when so acting an administrator "cannot be justifiably reproached," Sheridan v. Riley, 133 N.J. Eq. 288, 291 (Ch. 1943).  We also note that an administrator has the statutory power "to compromise, contest or otherwise settle any claim in favor of the estate . . . or in favor of third persons and against the estate . . . including transfer, inheritance, estate, income and other taxes." N.J.S.A. 3B:14-23(m); accord Sheridan, 133 N.J. Eq. at 291.

In his written opinion, Judge Contillo determined that the administrator had undertaken "a broad and expansive investigation of the various issues presented, and made a reasonable determination that further avenues of investigation were unnecessary in light of the potential costs that would be borne by the [e]state."  He approved of the manner in which the remaining issues had been resolved and refused to allow "plaintiff to now re-open all of the doors that

the [a]dministrator has previously explored, let alone open new ones, on the record before the court."[6]

With the exception of the parties' arguments about the fee awards, we find insufficient merit to warrant discussion in this opinion of any other issues raised by the parties. R. 2:11-3(e)(1)(E).

With that, we turn to the parties' arguments about the counsel fee awards, and we conclude that (1) defendant's fee application should have been denied in its entirety, and (2) plaintiff's request for fees was properly sustained, but (3) the judge failed to conduct an appropriate Rendine[7] analysis in fixing an award in plaintiff's favor.

I

We start with the well-established tenet that our courts adhere to the American rule that litigants bear their own fees unless otherwise provided by court rule, statute, or contract. See In re Niles Trust, 176 N.J. 282, 294 (2003); Henderson v. Camden Cty. Mun. Util. Auth., 176 N.J. 554, 564 (2003). The

---

[6] Judge Contillo also correctly recognized that plaintiff was precluded by the doctrine of collateral estoppel from arguing that the estate had an interest in Dong Nam NJ because that issue was previously resolved by summary judgment and that determination was not raised, as it should have been if it were to be preserved, in the appeal decided by us in 2016.

[7] Rendine v. Pantzer, 141 N.J. 292 (1995).

only arguable basis for an award in this matter rests with <u>Rule</u> 4:42-9(a)(2), which authorizes an award of fees to a litigant from a "fund in court." <u>Henderson</u>, 176 N.J. at 564; <u>Sarner v. Sarner</u>, 38 N.J. 463, 468 (1962); <u>Sunset Beach Amusement Corp. v. Belk</u>, 33 N.J. 162, 168 (1960). "Fund in court" is

> a shorthand expression intended to embrace certain situations in which equitable allowances should be made and can be made consistently with the policy of the rule that each litigant shall bear his own costs. The difficulty with the term is that literally it may connote a fund within the precincts of the court in a physical or geographical sense whereas "in court" refers to the jurisdictional authority of the court to deal with the subject matter . . . . And for that matter, the existence of power in the court to control the subject matter is not itself enough to demonstrate the existence of a "fund in court" within the purpose of the rule.
>
> [<u>Sunset Beach</u>, 33 N.J. at 168.]

To obtain fees from a fund in court, a litigant must have aided directly in creating, preserving, or protecting the fund. <u>Sarner</u>, 38 N.J. at 469; <u>Shilowitz v. Shilowitz</u>, 115 N.J. Super. 165, 188 (Ch. Div. 1971). As amplified by the Court in <u>Henderson</u>, it must be shown that the fee applicant's efforts "produce[d] a tangible economic benefit for a class of persons that did not contribute to the cost of the litigation." 176 N.J. at 564. And, as said in <u>Sunset Beach</u>, a court must consider whether it would be unfair "to saddle the full cost of the litigation upon the litigant for the reason that the litigant is . . . [not only] advancing his

23

own interests" but is acting for the benefit of others as well. 33 N.J. at 168. In short, a litigant is not entitled to a fee award if he has sued merely for his own interest or benefit if it does not benefit others. Shilowitz, 115 N.J. Super at 188.

The granting of a fee award on this basis is a matter left to the trial court's discretion and fee determinations should be disturbed only where there has been a clear abuse of discretion, Giarusso v. Giarusso, 455 N.J. Super. 42, 51 (App. Div. 2018), that is, when "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis," Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir. 1985)).

It is abundantly clear that defendant is not entitled to a fee award. It seems even defendant understood this, acknowledging he filed his fee application only as a response to plaintiff's application. He did not take any action that benefited or assisted in the creation of the fund in court. To the contrary, he resisted plaintiff's claim – ultimately borne out and adjudicated by way of summary judgment, which we readily affirmed – that the $900,000 sent by the decedent to B&H constituted an investment in B&H and not, as defendant claimed, a gift. Estate of Byung-Tae Oh, 445 N.J. Super. at 409-12. In the proceedings leading

A-2760-18

up to our prior opinion in 2016, <u>see</u> n.1, above, defendant appears to have done all in his power to avoid the creation of this fund in court.

Moreover, the award was based on an assertion that defendant – once the dispute about the $900,000 was finally resolved – was cooperative with the administrator's efforts to search for other estate assets that might be found in New Jersey. Even if that is so, we reject the contention that a litigant who cooperates with an administrator is entitled to a fee based on <u>Rule</u> 4:42-9(a)(2) when his cooperation does not lead to creating, enhancing or preserving a fund. Litigants are supposed to cooperate; the fund shouldn't have to pay for that cooperation.

Because the judge should have denied defendant's fee request, we reverse the order that imposed on the estate the obligation to pay defendant $978,157.99 in fees from the estate.

II

Consideration of defendant's appeal of the fee award granted to plaintiff requires that we examine: (a) the timeliness of the fee motion, and (b) the legal ground for the award.

A-2760-18

A

Plaintiff filed his motion for fees thirty-one days after entry of the order approving the administrator's report. Defendant contends it was untimely, viewing the fee-motion as the equivalent of – or otherwise subsumed by – Rule 4:49-2, which fixes – and does not permit relaxation of – the time to file a motion "for rehearing or reconsideration seeking to alter or amend a judgment or order" at twenty days from service of the judgment on the movant. Defendant's entire approach to this question is misguided.

To repeat, plaintiff's complaint alleged that estate assets were present in this State and sought, among other things, the appointment of an administrator to marshal those assets. The complaint specifically invoked the fund-in-court rule as a basis for a fee claim. The July 31, 2018 order that approved the administrator's report brought the matter nearly to a close but there remained plaintiff's inchoate demand for fees that could not be appreciated or assessed until the judge decided the issues by way of the July 31, 2018 order. So, rather than looking at the July 31, 2018 order as a final order – which defendant does in urging application of Rule 4:49-2's time-bar[8] – we must instead look at it as

---

[8] The right to alter, amend or reconsider under Rule 4:49-2 presupposes a final judgment or order. Rusak v. Ryan Auto., LLC, 418 N.J. Super. 107, 117 n.5

an interlocutory order that resolved everything except plaintiff's application for fees. In that instance, there would be no rigid time-bar to be applied, although plaintiff would have been expected to move for fees in this circumstance within a reasonable time after service of the July 31, 2018 order. Considering the illness and untimely death of the attorney who had been handling the case on plaintiff's behalf, it was hardly unreasonable for plaintiff to file the fee motion thirty-one days after the July 31, 2018 order.[9]

Even if the July 31, 2018 order could be viewed as a final order, the judge had the discretion – which he expressly applied – to invoke Rule 4:50 principles in relieving plaintiff, due to the excusable circumstance presented, of the consequences of failing to move more quickly for counsel fees. Certainly, the

_____

(App. Div. 2011). The July 31, 2018 order was not a final order because one of the claims pleaded in plaintiff's complaint had not been adjudicated. See Petersen v. Falzarano, 6 N.J. 447, 453 (1951); see also Silviera-Francisco v. Bd. of Educ. of City of Elizabeth, 224 N.J. 126, 136 (2016). Without finality, a motion to alter, amend, or reconsider an interlocutory order is governed by Rule 4:42-2, which has no fixed time-bar.

[9] Interestingly, while motions for fees in our appellate courts must be filed within ten days after determination of the appeal, R. 2:11-4, the rules applicable in the trial courts do not erect a time-bar for fee applications following the adjudication of the merits of a claim. In fact, fee awards must be incorporated in a trial court's final judgment, see R. 4:42-9(d) (declaring that "[a]n allowance of fees made on the determination of a matter shall be included in the judgment or order stating the determination"), further demonstrating that the July 31, 2018 order was not a final order.

illness and death of plaintiff's attorney would excuse a filing that was – even if we assume the motion was due within twenty days – a mere eleven days late. While favoring the efficient adjudication of cases, the goal of our court rules is also tempered by a strong interest in producing "just determination[s]." R. 1:1-2; see Tucci v. Tropicana Casino & Resort, Inc., 364 N.J. Super. 48, 53 (App. Div. 2003).

For these reasons, we reject the argument that plaintiff's motion for fees was filed out of time.

B

Defendant additionally argues that plaintiff's fee award must be reversed because, in commencing and pursuing this litigation, plaintiff acted only for himself. Not so. That may have been plaintiff's primary motivation, but his action also benefited the estate and, indirectly, the other estate beneficiaries.

The fund-in-court rule emanates from principles established long ago, see, e.g., In re Estate of Fisher, 115 N.J. Eq. 329, 333 (E. & A. 1933), and cases cited therein, that recognized probate courts possess the power to compel a reimbursement of a litigant who "undertakes a judicial proceeding in the interests of a fund – that is, to protect it, recover it, increase it or adjust rights in it" – because it is "but fair" that the persons benefiting, even if the litigant is a

beneficiary, should "share of the expense of that proceeding."  7A New Jersey Practice, Wills and Administration §1545, at 86 (Alfred C. Clapp & Dorothy G. Black) (rev. 3d ed. 1984).  There is no question that plaintiff's pursuit of his claim benefited the estate, as the judge correctly recognized, by demonstrating that decedent's $900,000 transfer of funds to B&H constituted an investment in that entity, not a gift to defendant.[10]  Plaintiff also sought and obtained in this action the appointment of an administrator, whose work resulted in defendant agreeing to make a $1,200,000 capital contribution to B&H, which also benefited the estate.

We thus reject defendant's argument that plaintiff was not entitled to a fee award under Rule 4:42-9(a)(2).  While we accept the argument that plaintiff was also out for himself in bringing this litigation – as is often the case in similar matters – the fact remains that plaintiff succeeded – in part – in identifying, securing, and enhancing valuable estate assets through this litigation.

---

[10] Defendant's argument that the suit was unnecessary because a Korean court had already determined the estate owned 40.8% of B&H is frivolous.  Indeed, the proof of the frivolity of this position is in the pudding.  If the issue had already been adjudicated, why did defendant resist plaintiff's claim, oppose summary judgment, and appeal that decision to this court?  Defendant put plaintiff to the pain of proving that the decedent had made an investment – not a gift – and, having established that fact in the jurisdiction where that asset could be found, plaintiff did a service for the estate and its beneficiaries.

# III

We lastly consider whether the trial judge properly fixed the amount of fees he awarded to plaintiff.

It is axiomatic that in quantifying a fee award, a court must first calculate the "lodestar," i.e., "the number of hours reasonably expended multiplied by a reasonable hourly rate." Rendine, 141 N.J. at 334-35. The Supreme Court has cautioned that "trial courts should not accept passively the submissions of counsel to support the lodestar amount" but should instead inquire as to what a reasonable amount of time expended should have been, as opposed to the hours actually expended by counsel, id. at 335; Giarusso, 455 N.J. Super. at 51, through consideration of the various factors outlined in RPC 1.5(a). When the fee application is based on the fund-in-court rule, a court should also consider: (1) the amount of the estate and the amount in dispute; (2) the skill, diligence, ability and judgment shown by the attorney; (3) the results obtained; and (4) the benefits or advantages resulting to the estate, and their importance. In re Bloomer, 37 N.J. Super. 85, 94 (App. Div. 1955).

The judge fixed plaintiff's fee by adopting a date suggested by the administrator as the moment when plaintiff ceased providing a benefit to the

estate[11] and then adopting a dollar amount in the most conclusory of fashions by rigidly utilizing that date as the cut-off without analyzing the reasonableness of the various services occurring within that time frame. Rendine requires a more searching analysis than that.

We recognize the difficulties facing the judge to whom this question befell. Judge Contillo, who presided over this matter from the outset, had retired before these issues reached the court, leaving the matter to be addressed by another judge unfamiliar with what had previously transpired. But those difficulties are not insurmountable. Because the rule does not permit an award of fees for services that did not benefit the estate, 7A Clapp & Black, § 1547, at 97, the judge should focus on those steps taken by plaintiff that actually benefited the estate and fix a reasonable fee for those steps based on the principles outlined in Rendine, RPC 1.5(a), and Bloomer. The judge should analyze the fees plaintiff seeks with a particular appreciation for the size of the recovery as compared to the fees sought; that is, no one would quarrel with the notion that it is unreasonable to spend $100,000 in fees to recover $50,000. The reasonableness of plaintiff's fee should be fixed through application of all the

---

[11] The administrator suggested January 31, 2016 – the date he filed the General Equity action – as representative of when plaintiff ceased benefitting the estate.

standards we have alluded to and, ultimately, by comparing the services to the results obtained.

* * *

To summarize, we affirm the July 31, 2018 order that, among other things, approved the administrator's report. We reverse that part of the January 14, 2019 order that awarded defendant $978,157.99 in fees because defendant was not entitled to an award of counsel fees from estate assets. We vacate that part of the January 14, 2019 order that awarded plaintiff $1,049.589.14 in fees and remand for further proceedings regarding plaintiff's motion for counsel fees, under <u>Rule</u> 4:42-9(a)(2), in conformity with this opinion.

Affirmed in part, reversed in part, and vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION